UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. ex rel. TERRY D. MCLAIN and J. LEN HODGES | Civil Action No. 06-11229 c/w 09-4191 *Pertaining to 06-11229* |
| v. | |
| FLUOR ENTERPRISES, INC., SHAW ENVIRONMENTAL, INC., and CH2M HILL CONSTRUCTORS, INC. | SECTION "C" (3) |

**ORDER AND REASONS[1]**

Before the Court are the motions of each defendant, FLUOR ENTERPRISES, INC. (Rec. Doc. 89), SHAW ENVIRONMENTAL, INC. (Rec. Doc. 99), and CH2M HILL CONSTRUCTORS, INC. (Rec. Doc. 87), to dismiss plaintiffs' civil action brought against it in the first amended complaint (Rec. Doc. 53). Plaintiffs oppose the motions, except as to Count V against Shaw Environmental, Inc., to which plaintiffs consent to dismissal without prejudice. Rec. Doc. 150 (Fluor Enterprises, Inc.); Rec. Doc. 160 (Shaw Environmental, Inc.); Rec. Doc. 149 (CH2M Hill Constructors, Inc.). Having considered the record, the memoranda of counsel and the law, the Court: (1) DENIES the defendants' motions to dismiss as to Counts I, II, IV, VII, and VIII regarding presentment and creation of false or fraudulent claims, statements, and records, (2) GRANTS the defendants' motions as to Counts III, VI, and IX regarding conspiracy, and (3) reserves judgment on Count V regarding Shaw's alleged false statements and records to provide the United States with the opportunity to object to the voluntary dismissal of Count V without prejudice.

---

[1] Nicholas Roosevelt, a second-year student at Northwestern Law School, assisted in preparing this Order and Reasons.

1

**I. BACKGROUND**

Plaintiffs TERRY D. MCLAIN and J. LEN HODGES ("plaintiffs"), on behalf of the United States Government and in accordance with the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), filed under seal a complaint against defendants in December 2006. Rec. Doc. 1. The original complaint alleged that, among other defendants, FLUOR ENTERPRISES, INC. ("Fluor"), SHAW ENVIRONMENTAL, INC. ("Shaw"), and CH2M HILL CONSTRUCTORS, INC. ("CH2M") each violated 31 U.S.C. § 3729 while serving as a contractor to the Government in the aftermath of Hurricanes Katrina and Rita. *Id.* In accordance with 31 U.S.C. § 3730(b), the Government conducted an investigation and on December 21, 2012, notified the Court that it would not intervene in the plaintiffs' action. Rec. Doc. 51. The plaintiffs then filed an amended complaint on January 3, 2013, with allegations only against each named defendant described immediately below. Rec. Doc. 53.

**A. Allegations Against Fluor**

In summary, the amended complaint alleges that Fluor was a contractor to the Federal Emergency Management Agency ("FEMA") starting in September 2005, was contractually obligated to identify federal, State, and local codes, and was contractually obligated to have "registered/licensed technicians (plumbers, electricians' [sic] etc.) to conform to State and local requirements for installing and/or hooking up systems . . . ." Rec. Doc. 53 at ¶¶ 30-32. Plaintiffs assert that Fluor, along with its subcontractors, did not comply with State of Louisiana gas safety statutes[2] while installing thousands of trailers with gas systems between September 2005 and

---

[2]The amended complaint includes a recitation of pertinent State law in a separate section. Rec. Doc. 53 at ¶¶ 11-25.

2

April 2006. *Id.* at ¶¶ 49, 54, 60-61. Plaintiffs allege that Fluor therefore was not entitled to payment under its contract. *Id.* at ¶ 3. Plaintiffs allege that Fluor obtained actual knowledge of its failure to comply with State gas safety statutes on or before January 2006, received communications from FEMA regarding the importance of compliance, applied for gas safety permits on March 16, 2006, and entered a "no contest" plea to a criminal charge for the knowing violation of Louisiana's gas safety statutes on May 25, 2006. *Id.* at ¶¶ 50, 51, 57, 59, 62. Plaintiffs allege that Fluor thereafter continued to submit and be paid for multiple claims for payment to FEMA (listed in the amended complaint by date and amount). *Id.* at ¶¶ 52, 55, 58, 63. Each of those claims allegedly contained a certification that the work resulting in the amount submitted for payment had been performed "in accordance with terms of the contract." *Id.* at ¶¶ 52, 55, 58, 63, 64. Plaintiffs allege that Fluor violated 31 U.S.C. §3729 in Counts I, II, and III as discussed in Section II of this Order and Reasons. *Id.* at ¶¶ 99-113.

Along with its motion to dismiss, Fluor attached a number of documents including its contract with FEMA referred to in the amended complaint, as well as records relating to Fluor's alleged "no contest" plea. Rec. Docs. 89-2 through 89-5, Exhs. 1-3. Fluor argues that these documents support its general proposition that the plaintiffs' claims are without merit, particularly because "the entire case against Fluor is based solely on whether Fluor violated one of thousands of state and local regulations that Fluor attempted to comply with." Rec. Doc. 89-1 at 6. Fluor argues that the plaintiffs have not adequately alleged that Fluor was not entitled to payment for each of its allegedly false claims or that Fluor actually made false claims recognizable under the False Claims Act. *Id.* at 17-22. Fluor also argues that the plaintiffs' amended complaint fails because it does not allege that Fluor is vicariously liable for the actions

3

of its employees. *Id.* at 9. Finally, Fluor argues that plaintiffs have not pleaded any of the elements of conspiracy with particularity. *Id.* at 10.

**B. Allegations Against Shaw**

The amended complaint alleges that Shaw submitted a work plan to FEMA on or about September 27, 2005, and then entered a contract with FEMA based on that work plan on or about October 7, 2005. Rec. Doc. 53 at ¶¶ 34-35. The work plan allegedly represented that Shaw would conform all of its activities under the contract to federal, State, and local laws, would oversee and review the compliance of each of its subcontractors, and would research and identify State and local requirements. *Id*. Shaw also allegedly represented in the work plan that it would research and identify the processes for obtaining permits and that Shaw could receive compensation for researching, identifying and complying with State or local requirements. *Id.* at ¶ 36. Plaintiffs further allege that the actual contract between FEMA and Shaw contained a provision regarding adherence with local state and federal building regulations and laws, as well as a provision regarding permitting and licensing obligations. *Id.* at ¶¶ 37-38. Plaintiffs' amended complaint lists by title four FEMA task orders allegedly issued to Shaw under the contract and alleges that at least three of the task orders incorporated by reference include statements of works that described Shaw's obligation to install propane tanks "in accordance with all applicable federal, State, and local guidance." *Id.* at ¶¶ 39-44.

Plaintiffs assert that Shaw, along with its subcontractors, did not comply with State of Louisiana gas safety statutes while installing thousands of trailers with gas systems between October 2005 and July 2006. *Id.* at ¶¶ 66-73. Plaintiffs allege that Shaw obtained actual knowledge of its failure to comply with State gas safety statutes on or before January 2006 and

communicated internally about its failure to comply. *Id.* at ¶¶ 67-68. Shaw allegedly also communicated orally with the plaintiffs regarding compliance on January 30, 2006, at the scene of a propane gas explosion that had occurred a day earlier inside a FEMA trailer installed by a Shaw subcontractor. *Id.* at ¶ 67. The amended complaint further alleges that Shaw represented to FEMA in a February 14, 2006 email that Shaw was complying with "all Federal, State and Local laws and regulations," but on May 24, 2006, entered a "no contest" plea to a criminal charge for the knowing violation of Louisiana's gas safety statutes. *Id.* at ¶¶ 71-72. Plaintiffs allege that Shaw thereafter continued to submit and be paid for multiple claims for payment to FEMA (listed in the amended complaint by date and amount). *Id.* at ¶¶ 75. Plaintiffs do not allege that Shaw made compliance certifications on its claims for payments, but rather that the claims for payment "inherently implied certification and representation by Shaw that Shaw had complied with such task order terms." *Id.* at ¶ 79. Finally, plaintiffs allege that Shaw agreed and conspired internally and with its subcontractors to allow claims for payment to be submitted for noncompliant work performed. *Id.* at ¶ 80. Plaintiffs allege that Shaw violated 31 U.S.C. §3729 in counts IV, V, and VI as discussed below. *Id.* at ¶ 114-128.

Along with its motion to dismiss, Shaw attached a number of documents referred to in the amended complaint, including its contract with FEMA (Rec. Doc. 99-2, Exh. 1), task orders (Rec. Docs. 99-2 through 99-5, Exhs. 2-4), copies of emails (Rec. Docs. 99-6 through 99-8, Exhs. 5-7) and records relating to Shaw's alleged "no contest" plea (Rec. Docs. 99-9 through 99-14, Exhs. 8-13). Shaw argues that these documents demonstrate that Shaw did not submit false claims, because it was entitled to all invoiced amounts. Rec. Doc. 99-1 at 28. Additionally, Shaw argues that plaintiffs cannot show Shaw ever made false certifications of compliance, because it

5

made no such certification when submitting its invoices and the alleged email representations are misconstrued. *Id.* at 11, 34-36. Furthermore, Shaw argues that the amended complaint does not show that FEMA payments were conditioned on Shaw's compliance with the gas safety requirements. *Id.* at 39. Shaw also argues that a settlement agreement that postdated the alleged "no contest" plea demonstrates that there was a dispute over Shaw's obligations to comply with the gas safety requirements, making plaintiffs' pleadings of knowing submission of false claims inadequate. *Id.* at 36-38. Finally, Shaw argues that the amended complaint fails to plead conspiracy with particularity. *Id.* at 39-41.

In its reply memorandum to Shaw's motion to dismiss, plaintiffs consented to the dismissal without prejudice of Count V, regarding the creation of a false record or statement. Rec. Doc. 160 at 38. Plaintiffs noted that "without the benefit of discovery . . . at this time and upon reflection, [plaintiffs] lack sufficient information concerning the full contents of claims invoices and related express statements presented by Shaw to FEMA." *Id.*

### C. Allegations Against CH2M

The amended complaint alleges that CH2M was a contractor to FEMA from September 2005 through January 2006, was contractually obligated to affirmatively research federal, State, and local codes associated with its contractual activities, and was contractually obligated to install propane tanks in accordance with all applicable federal, State, and local guidance. Rec. Doc. 53 at ¶¶ 3, 46-48, and 82. Plaintiffs assert that CH2M, along with its subcontractors, did not comply with State of Louisiana gas safety statutes while installing thousands of trailers with gas systems between October 2005 and June 2006. *Id.* at ¶¶ 82-84. Plaintiffs allege that CH2M therefore was not entitled to payment under its contract. *Id.* at ¶ 3. Plaintiffs allege that CH2M obtained actual knowledge of its failure to comply with State gas safety statutes on or before February 2006, communicated internally about its failure to comply with the gas safety statutes

6

starting in February 2006, communicated with FEMA regarding compliance during that same period, and represented to FEMA in an April 10, 2006, email that CH2M's subcontractors dealing with propane had met State requirements. *Id.* at ¶¶ 82-94. Plaintiffs allege that CH2M thereafter continued to submit and be paid for multiple claims for payment to FEMA (listed in the amended complaint by date and amount). *Id.* at ¶¶ 87, 93, 95. Each of those claims allegedly contained a certification that "amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract." *Id.* at ¶¶ 87, 93, 95-96. Plaintiffs allege that CH2M violated 31 U.S.C. §3729 in counts VII, VIII, and IX as discussed below. *Id.* at ¶¶ 129-43.

Along with its motion to dismiss, CH2M attached its contract with FEMA and related contract documents. Rec. Docs. 87-3 through 87-9, Exh. 1. CH2M argues that the plaintiffs' amended complaint does not establish that CH2M knowingly submitted a material false claim to FEMA. Rec. Doc. 87-1 at 6-7. CH2M also argues that the amended complaint does not meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Id.* In its reply to plaintiffs' memorandum in opposition to CH2M's motion to dismiss, CH2M adopted the legal arguments of Fluor. Rec. Doc. 169.

## II. LAW AND ANALYSIS

**A. Standard of Review**

To review a Rule 12(b)(6) motion to dismiss, a court construes a complaint liberally in favor of the plaintiff and accepts all well-pleaded facts as true. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)). A plaintiff does not have to meet a standard of "heightened fact pleading of specifics" in order to survive a 12(b)(6) motion, but must plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. V.*

7

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). Generally, if a motion to dismiss includes documents outside the pleadings that are not excluded by the court, the motion should be considered as one for summary judgment; however, if the documents are referred to in the plaintiff's complaint and central to the plaintiff's claim, a court may consider the documents for the purposes of a motion to dismiss. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

Additionally, complaints alleging a violation of the False Claims Act must comply with the particularity requirement of Federal Rule of Civil Procedure Rule 9(b). *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). To comply with Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. The objectives of Rule 9(b) are to ensure a complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Steury*, 625 F.3d at 266 (internal citations omitted). Rule 9(b) is applied with "bite" and "without apology", but it "ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial." *Grubbs*, 565 F.3d at 185 & 189. For actions under the False Claims Act, the Fifth Circuit "reach[es] for a workable construction of Rule 9(b) . . . that effectuates Rule 9(b) without

stymieing legitimate efforts to expose fraud." *Id.* at 190. There is "no single construction of Rule 9(b) that applies in all contexts . . . it depends on the elements of the claims at hand." *Id.* at 188.

The nine counts against defendants in the amended complaint cite to the False Claims Act as it was prior to the Fraud Enforcement & Recovery Act of 2009, an act of Congress amended the language of § 3729. *See* Pub.L 111-21 §4, 123 Stat. 1617 (2009). Six of the nine counts are unaffected by the 2009 amendment; however, the amendment applies to Counts II, V, and VIII, which allege a violation of what was § 3729(a)(2) and is now § 3729(a)(1)(B). This is because the plaintiffs' claim was "pending on or after June 7, 2008." *See Steury*, 625 F.3d at 267 n. 1 (citing *Allison Engine Co. V. United States ex rel. Sanders*, 553 U.S. 662, 665, 128 S.Ct. 2123, 170, 170 L.Ed.2d 1030 (2008)); *see also* Pub.L. 97-258, § 3729(1), (3), 96 Stat. 877 (1982) (for public law applicable to Counts I, III, IV, VI, VII and IX); *see also* Pub.L. 111-21, §4(f)(1), 123 Stat. 1617, 1621 (2009) (for public law applicable to Count II, V, and VIII). Following the context-specific analysis prescribed by *Grubbs*, the Court looks at each of the three provisions of False Claims Act allegedly violated by the defendants in turn.

**B. Counts I, IV, and VII—False Claims for Payment Under § 3729(a)(1) of the False Claim Act as Codified Prior to the Fraud Enforcement & Recovery Act of 2009**

To properly allege a violation of § 3729(a)(1) as it existed prior to the 2009 amendments, a plaintiff must allege that: (1) the defendant presented a claim to the Government, (2) the claim was false or fraudulent, and (3) the presentment was undertaken knowingly. *Grubbs*, 565 F.3d at 188. A plaintiff does not have to allege actual or specific damages: "It is adequate to allege that a false claim was knowingly presented regardless of its exact amount" and the complaint "need not allege that the Government relied on or was damaged by the false claim." *Id.* at 189. In *Grubbs*, a plaintiff doctor alleged that a group of other doctors at the hospital at which the plaintiff worked and the hospital itself were billing Medicare and Medicaid for services that had not

9

actually been performed. *Id.* at 183. The *Grubbs* court ruled that the plaintiff's complaint against five of the doctors was sufficient, because it included the dates, place, participants and general scheme related to the doctors' false claims for payment. *Id.* at 191-92. In contrast, the court ruled that the allegations against the remaining doctors and the hospital were inadequate, because the plaintiff provided no indication that they were ever aware of any false claims for payment being submitted and there was "no basis for inferring otherwise." *Id.* at 192.

In assessing the adequacy of a complaint alleging a false claim for payment, the Fifth Circuit has also considered whether or not the complaint sufficiently alleges that compliance with laws or regulations was a condition for payment. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*, 125 F. 3d 899, 902-903 (5th Cir. 1997). In *Thompson* the defendant doctors had allegedly violated federal statutes in the course of providing medical services later paid for by Medicare. *Id.* at 900. The plaintiff's complaint did not make clear that the alleged violations were material to the defendants' claims for payments. *Id.* at 902. The *Thompson* court held that "where the government has conditioned a payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *Id*. The court reversed and remanded the defendants' granted motion to dismiss with instructions to the district court to determine whether the defendants' Medicare claims for payment independently contained false claims regarding compliance with the federal statutes made in order to obtain payment. *Id.* at 903. Each defendant argues that *Thompson* stands for a pleading requirement that the false claim must allege a false certification with a particular law or regulation. Rec. Doc. 89-1 at 16-17 (Fluor); Rec. Doc. 99-1 at 16 (Shaw); Rec. Doc. 87-1 at 14-15 (CH2M). The Court is not persuaded that *Thompson* stands for any such requirement. Instead, the *Thopmson* court made clear that a false certification of compliance with a law or statute was

10

an example of a false or fraudulent claim. *Id.* at 902 ("Thus, where the government has conditioned payment of a claim upon a claimant's certification of compliance with, *for example*, a statute or regulation . . .) (emphasis added).

Here, plaintiffs' amended complaint provides sufficient particularity for each defendant regarding: (1) the multiple claims for payment submitted to FEMA, (2) the alleged falsity of those claims, and (3) the defendant's knowledge that it had presented those false claims. The alleged facts supporting plaintiffs' claims against the defendants are not uniformly pleaded as to each defendant; however, enough alleged facts support a plausible claim for relief against each defendant.

In relation to Fluor, plaintiffs supply ample detail of the claims for payment submitted to FEMA that included compliance certifications. Rec. Doc. 53 at ¶¶ 52-53, 55-56, 58, 63. Plaintiffs also allege a theory of why those claims were false. The amended complaint includes a description of Fluor's allegedly relevant contractual obligations, including a requirement that "the contractor, must be, or have employed, registered/licensed technicians (plumbers, electricians' [sic] etc.) to conform to State and local requirements." Rec. Doc. 53 at ¶¶ 30-33; Rec. Doc. 89-2 at 113. Plaintiffs do not allege that officials at Fluor sent internal emails acknowledging Fluor's non-compliance, but the amended complaint does allege a Fluor official did not respond to an email regarding gas safety compliance that asked directly, "are you getting these certificates?" Rec. Doc. 53 at ¶ 57.

In relation to Shaw, plaintiffs supply ample detail of the claims for payment submitted to FEMA. Rec. Doc. 53 at ¶ 75. Plaintiffs also allege a theory of why those claims were false. The amended complaint includes a description of Shaw's allegedly relevant contractual obligations. *Id.* at ¶¶ 34-41; Rec. Doc. 99-2. Plaintiffs also allege that some of Shaw's Statements of Work included the express requirement of filling propane tanks and that "the tanks shall be installed

and stored in accordance with all applicable federal, State, and local guidance." Rec. Doc. 53 at ¶ 44; Rec. Doc. 99-5 at 9-10. The plaintiffs also have alleged that officials at Shaw demonstrated awareness of their companies' gas safety non-compliance through internal emails and that FEMA communicated with Shaw regarding the importance of compliance. Rec. Doc. 53 at ¶¶ 68 and 71. The amended complaint alleges that Shaw was not complying with the gas safety requirements yet continued to invoice FEMA without regard to its non-compliance. *Id.* at ¶¶ 70 and 73. Finally, plaintiffs' allegations regarding the January 2006 gas explosion and subsequent interactions between plaintiffs and employees of Shaw further support plaintiffs' allegations that Shaw was aware of its non-compliance, yet continued to invoice FEMA. Rec. Doc. 53 at ¶ 69. The Court is persuaded that these allegations are sufficient for the purposes of pleading a violation of § 3729(a)(1).

In relation to CH2M, plaintiffs supply ample detail of the claims for payment submitted to FEMA. Rec. Doc. 53 at ¶ 87, 93, and 95. Plaintiffs also allege a theory of why those claims were false. The amended complaint includes a description of CH2M's allegedly relevant contractual obligations. *Id.* at ¶¶ 46-48; Rec. Doc. 87-3 through 87-9, Exh. 1. Plaintiffs have alleged how officials at CH2M demonstrated awareness of their companies' gas safety non-compliance through both internal emails and emails with FEMA, but continued to invoice FEMA and allegedly confirmed their compliance by email. Rec. Doc. 53 at ¶¶ 92-94. The Court is persuaded that these allegations are sufficient for the purposes of pleading a violation of § 3729(a)(1).

Unlike *Thompson*, the alleged connection between the alleged false claim and subsequent payment from the Government is sufficiently clear for the purposes of pleadings against each of the defendants. All three defendants allegedly had contractual obligations to research and comply with State laws, but allegedly did not comply, knew they did not comply, yet invoiced

12

FEMA without regard to this non-compliance. The Court is persuaded that these allegations are sufficient for the purpose of defeating a 12(b)(6) motion.

All defendants argue that the amended complaint does not adequately allege that the defendants were not fully entitled to the claims for payment it submitted to FEMA, citing for support the Fifth Circuit decision, *United States v. Southland Management Corp*, 326 F.3d 669 (5th Cir. 2003). Rec. Doc. 89-1 at 15 (Fluor); Rec. Doc. 99-1 at 15-16 (Shaw); Rec. Doc. 87-1 at 11-14 (CH2M). Defendants argue that a failure to comply with the Louisiana gas safety requirements would not constitute a breach of contract or impact FEMA's obligation to pay amounts requested by CH2M in full. Rec. Doc. 89-1 at 15 (Fluor); Rec. Doc. 99-1 at 15-16 (Shaw); Rec. Doc. 87-1 at 11-14 (CH2M). The Court is not persuaded that *Southland Management*, a summary judgment decision, authorizes a court to rule on the merits of defendants law of contracts arguments on a Rule 12(b)(6) motion to dismiss. *Southland Management* provides a defense to a False Claims Act claim, but does not clearly state how a claim must be pleaded in a complaint to satisfy Rule 9(b). Furthermore, a review of *Southland Management*'s case history indicates the breach of contract summary judgment ruling was made with the benefit of a well-developed factual record, something currently lacking in this case. *See Southland Management,* 326 F.3d at 671-674; *see also Southland Management*, 95 F. Supp. 2d 629, 631-42 (S.D. Miss. 2000) (for more detailed discussion of factual record for the case). The Court therefore rules that the plaintiffs have sufficiently alleged a violation of § 3729(a)(1).

**C. Counts II and VIII—False Records Under § 3729(a)(1)(B) of the False Claims Act as Amended**

To properly allege a violation of § 3729(a)(1)(B) under the False Claims Act as currently amended, "a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the

13

Government." *Steury*, 625 F.3d at 267. In listing the four elements, the *Steury* court in 2010 cited numerous Fifth Circuit decisions regarding causes of action predating the applicability of the 2009 amendment, indicating False Claims Act precedent is still good law. *Id.* at 267-70 (*See e.g. Willard*, 336 F.3d 375 and *Thompson*, 125 F.3d 899). Fluor and CH2M argue that the plaintiffs' amended complaint does not allege with particularity that (1) a false statement or fraudulent course of conduct existed, (2) Fluor and CH2M acted knowingly, and (3) that Fluor and CH2M's alleged statements or conduct were material. The Court will address each of these issues in turn.

*i. False Statement or Fraudulent Course of Conduct*

The False Claims Act applies only to false statements or fraudulent courses of conduct that connect to a false claim paid by the Government. *Grubbs*, 565 F.3d at 193. Though not dealing with such a case, the *Steury* court referenced the *Thompson* court's holding that a fraudulent course of action exists where a defendant has falsely made an express certification of compliance that was required in order for the defendant to received payment for the Government. *Steury*, 625 F.3d at 268 (citing *Thompson*, 125 F.3d at 902). Here, the amended complaint alleges that numerous requests for payments by both Fluor and CH2M included allegedly false certifications of compliance with contract terms. Rec. Doc. 53 at ¶¶ 53, 56, 58, 64, 87, 93, 96. These pleaded facts make apparent the allegedly false statement or course of conduct of Fluor and CH2M that connects to a false claim paid by the Government.

*ii. The Requisite Scienter of Knowledge*

Knowledge means that an individual "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii) (2009). "[P]roof of specific intent to defraud" is not required. 31 U.S.C. § 3729(b)(1)(B). For the

14

purposes of pleading, the plain language of Rule 9(b) makes clear that allegations regarding scienter may be pleaded generally. Fed.R.Civ.P. 9(b).

Fluor and CH2M each argue that plaintiffs have not sufficiently alleged that defendant had the requisite scienter, citing for support *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009) and *U.S. ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008), as well as the *Grubbs* court's discussion of the hospital's liability discussed in Section B herein. The relevant portions of *Longhi* and *Taylor-Vick* pertain not to pleading standards, but scienter requirements for a finding of liability at summary judgment. *See Longhi*, 575 F.3d at 465-68; *see also Taylor-Vick*, 513 F.3d at 230-31. Nonetheless, *Taylor-Vick* makes clear that even on summary judgment, the Fifth Circuit "hesitate[s] to grant summary judgment when a case turns on a state of mind determination." 513 F.3d at 231 (citing *Int'l Shortstop, Inc. v. Rally's Inc.,* 939 F.2d 1257, 1265 (5th Cir. 1991)). Additionally, the *Grubbs* court's affirmation of the hospital's 12(b)(6) dismissal occurred where the plaintiff apparently included nothing in the pleadings indicating that the hospital was aware of the doctors' allegedly fraudulent conduct. 565 F.3d at 192. In contrast, the plaintiffs here have adequately alleged that defendants' officials sent or received emails that give rise to the inference that they were aware of their non-compliance, and yet Fluor and CH2M continued to certify compliance on claims for payment. Rec. Doc. 53 at ¶¶ 57 & 94.

*iii. Materiality*

The False Claims Act defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4) (2009). The *Steury* court emphasized that, likely falling under the materiality prong, a court must assess whether a contractor's compliance was "a 'condition' or 'prerequisite' for payment under a contract." 625 F.3d at 268. In *Steury*, the plaintiff alleged that the defendant

15

medical product company violated the False Claims Act by breaching the warranty under its contracts with hospitals for "Signature pumps" that the hospitals purchased using Medicare funds. *Id.* at 265-66. The *Steury* court affirmed the defendant's granted motion to dismiss, noting "we find no indication that the Government conditioned payment . . . on certification that the Signature pumps complied with the warranty of merchantability." *Id.* at 269. Unlike *Steury*, the plaintiffs' amended complaint makes clear that Fluor and CH2M's numerous certifications of compliance were not made independent of claims for payment, but rather as part of the claims. Rec. Doc. 53 at ¶¶ 56, 58, 64, 87, 93, 96. Had CH2M and Fluor not certified compliance on the claims for payment, it is reasonable to infer that FEMA would have refused to process the payment. This supports, at least for the purposes of pleading, the inference that the compliance certifications had the tendency to influence payment by FEMA and were material to the allegedly false claims for payment.

**D. Consent to Dismissal of Count V Without Prejudice**

In their memorandum in opposition to Shaw's motion to dismiss, plaintiffs consent to the dismissal of Count V, alleging Shaw violated § 3729(a)(1)(B), without prejudice. Rec. Doc. 160 at 38. Plaintiffs state that, without the benefit of discovery, they lack sufficient information regarding the content of claims made on Shaw's invoices and other express statements. *Id.* In order to dismiss an action under the False Claims Act, both the Court and the United States must give written consent and reasons for consenting to dismissal. 31 U.S.C. § 3730(b)(1). The Court reserves its judgment on Shaw's motion to dismiss Count V and orders the United States to provide the Court with written notice of its intent to either object or consent to dismissal, along with reasons for objecting or consenting. Should the United States not provide the Court with written notice within three weeks of the date of this order, the Court shall construe the United

States' silence to mean that it consents to the dismissal of the Count and Count V shall be dismissed.

**E. Counts III, VI, and IX—Conspiracy Under § 3729(a)(3) of the False Claims Act as Codified Prior to the Fraud Enforcement & Recovery Act of 2009 Amendments**

To properly allege a violation of § 3729(a)(3) as it existed prior to the 2009 amendment, a complaint must address two elements with particularity: "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by the Government and (2) at least one act performed in furtherance of that agreement." *Grubbs*, 565 F.3d at 193 (quoting). A plaintiff must "plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy. *Id.* (internal quotation marks omitted). The *Grubbs* court analyzed the plaintiff's pleadings for evidence indicating or supporting the "natural" inference that defendants had entered into an agreement and were carrying out that agreement. *Id.* at 193-94. The plaintiff's allegation included detail regarding meetings organized by five doctors to discuss the conspiracy. *Id.* The court ruled that those allegations offered a sufficient basis to infer the five doctors had entered into an agreement. *Id.* at 194. However, the court dismissed the count against the hospital and other doctors that worked in the hospital, noting that "even taking the allegations as true-that various doctors over a period of years each submitted certain false claims-does not, by itself, do more than point to a possibility of an agreement among them." *Id.*

Here, plaintiffs' conspiracy allegations against each defendant are similarly pleaded. The amended complaint lists the names of the defendants' alleged gas installation subcontractors. Rec. Doc. 53 at ¶¶ 30, 73, and 95. The amended complaint also alleges the defendants' overt acts of submitting multiple claims for payment to the Government that tied to work done by the subcontractors, allegedly without either the defendants or their subcontractors having complied

17

with the gas safety requirements. *Id.* In comparison with *Grubbs*, the particularity of the plaintiffs' allegations here fall short of the thoroughly-pleaded allegations against the five doctors. 565 F.3d at 193-94. Plaintiffs have provided the names of the parties they allege entered into a conspiracy, the alleged scheme of the conspiracy, the claims for payment constituting the alleged overt acts, as well as a window of time during which the alleged conspiracy occurred. What the plaintiffs have not provided is any indication that any of the parties actually agreed to enter into the alleged conspiracy.

Plaintiffs' allegations are similar to the allegations against the hospital and other doctors in *Grubbs*–-they point to little more than the possibility of an agreement among the stated parties, which the *Grubbs* court held to be inadequate for the purpose of pleading a conspiracy. *Id.* Only one of plaintiffs' memoranda opposing the defendants' motions addresses its conspiracy allegations. Rec. Doc. 149 at 30-31. The memorandum, besides restating its allegations as described in the paragraph above, does not provide any persuasive arguments or legal authority from which the Court could consider deviating from the guidance provided by *Grubbs*. Rec. Doc. 149 at 30-31. Particularly given *Grubbs*' view of the 9(b) particularity requirement as serving to prevent a plaintiff from making a "baseless claim then attempting to discover an unknown wrong," it is appropriate to dismiss the conspiracy Counts here. 565 F.3d at 190.

The Court notes that the United States in its notice declining to intervene in plaintiffs' action requested that the Court solicit the written consent of the United States before ruling or granting on any dismissal proposed by the plaintiff or the defendant. Rec. Doc. 51 at 2-3. Courts have held that the Attorney General's consent is only necessary in cases of voluntary dismissal, such as the voluntary dismissal of Count V. *See United States ex rel. Marcy v. Rowan Companies, Inc.,* 2006 WL 2414349, *17 (E.D.La. 2006) (*aff'd* without reference to Government's consent, 520 F.3d 384 (5th Cir. 2008)) (consent not necessary for court to grant

defendant's motion to dismiss); *see also United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932, 934 (8th Cir. 2001) ("Attorney General's consent is required only where the relator seeks a voluntary dismissal, not where, as here, the district court grants a motion by the defendant to dismiss for failure to state a claim"). The Court is persuaded that the Attorney General's consent to the Court's involuntary dismissal of Counts III, VI, and IX is not required.

**F. Defendant's Other Defenses**

The memoranda supporting the defendants' motions to dismiss include a number of additional arguments regarding the knowledge of FEMA, the context of the emails referred to in plaintiffs' amended complaint, the effect of the defendants' interactions and agreements with the Louisiana Liquified Petroleum Gas Commission, and the defendants' possible motivations and best efforts in the context of post-Katrina and Rita recovery efforts. Rec. Doc. 89-1 at 6-11, 20-23, and 30-32 (Fluor); Rec. Doc. 99-1 at 10-13, 32-33 (Shaw); Rec. Doc. 87-1 at 20-21 (CH2M). These arguments may well be pertinent to a summary judgment motion. By the pleading standards set forth and discussed above, however, the Court is not persuaded that the merits of these arguments are relevant for the purposes of considering the present motions to dismiss. As the *Grubbs* court made clear, because plaintiffs have adequately detailed the circumstances constituting allegedly false claims to the Government, "discovery can be pointed and efficient, with summary judgment following on the heels of the complaint if . . . records discredit the complaint's particularized allegations." *Grubbs*, 565 F.3d at 191.

Accordingly,

IT IS ORDERED that Fluor's motion to dismiss is PARTIALLY DENIED and PARTIALLY GRANTED. Rec. Doc. 89. The motion is denied as to Counts I and II and granted as to Count III. *Id.* at 2.

IT IS FURTHER ORDERED that Shaw's motion to dismiss is PARTIALLY DENIED

19

and PARTIALLY GRANTED. Rec. Doc. 99. The motion is denied as to Count IV and granted as to Count VI. *Id.* The Court reserves judgment on the voluntary dismissal of Count V. *Id.*

IT IS FURTHER ORDERED that the United States provide the Court with a written notice of any objection or consent to the dismissal of Count V without prejudice by (three weeks of the date of this order), on which date Count V shall be dismissed if the United States has not filed an objection. Rec. Doc. 99.

IT IS FURTHER ORDERED that CH2M's motion to dismiss is PARTIALLY DENIED and PARTIALLY GRANTED. Rec. Doc. 87. The motion is denied as to Counts VII and VIII and granted as to Count IX. *Id.*

New Orleans, Louisiana, this 29th day of July, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**