UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>EX REL. TERRY D. MCLAIN, *ET AL.* | CIVIL ACTION |
| VERSUS | No. 06-11229 & consol. cases<br>Pertains to: No. 09-4191 |
| FLUOR ENTERPRISES, INC., *ET AL.* | SECTION "C" (3) |

**ORDER AND REASONS**[1]

Before the Court is Defendants' the Shaw Group, Inc. and Shaw Environmental, Inc. ("Shaw") Motion to Dismiss Relators' civil action, which was asserted in the Second Amended Complaint ("SAC"). No. 09-4191, Rec. Doc. 34; No. 06-11229, Rec. Doc. 69. Thomas Warder, John Doe, and Jane Roe ("Relators") oppose the motion. No. 06-11229, Rec. Doc. 102. Having considered the record, the memoranda of counsel for the parties and the United States, and the applicable law, the Court DENIES Defendants' Motion to Dismiss for the following reasons.

**I. BACKGROUND**

This case arises out of the devastation caused by Hurricanes Katrina and Rita. The storms struck in 2005, causing millions of dollars of damage and displacing countless Gulf Coast residents. The Federal Emergency Management Agency ("FEMA") provided relief through its Individualized

---

[1] William Fullwood, a third-year student at Fordham University Law School, assisted in the preparation of this Order and Reasons.

1

Assistance-Technical Assistance Contract ("IA-TAC") program within FEMA's Recovery Division. No. 09-4191, Rec. Doc. 34 at 2.  In order to provide housing assistance to Gulf Coast residents in compliance with federal law, FEMA contracted with four corporations, including Shaw Environmental, for the transport and installation of tens of thousands of temporary housing units ("THUs").  *Id*. at 5.  This contract tasked Shaw with finding sites for THUs, installing utilities, hauling and installing THUs, preparing THUs for occupancy, performing maintenance work, and deactivating THUs.  *Id*. at 6.  This took place from September 2005 until approximately November 2006.  *Id*.

The Relators brought this *qui tam* action on behalf of the United States Government under the False Claims Act ("FCA").  *Id*. at 1.  Relators are former employees of FEMA who worked directly on IA-TACs during the recovery effort.  *Id.* at 2.  Their general duty was to "monitor the efforts being performed under the contractual agreement."  *Id.*

In their initial complaint, filed under seal on June 26, 2009, Relators alleged three counts under the FCA:  (1) Shaw self-issued work orders, sometimes double or triple billing for work; (2) Shaw failed to comply with Louisiana liquefied petroleum laws when hauling and installing THUs; and (3) Shaw billed the Government for work outside the contract's scope or for work not actually done.  No. 09-4191, Rec. Doc. 1.  Relators amended their complaint on December 15, 2009 and again on December 19, 2012.  No. 09-4191, Rec. Doc. 4; No. 06-11229, Rec. Doc. 34.

Defendants filed this Motion to Dismiss on February 7, 2013.  No. 06-11229, Rec. Doc. 69. Defendants argue that the Court should dismiss all counts made in the SAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  No. 06-11229, Rec. Doc. 69-1 at 15-17.  In their opposition memorandum, Relators consent to the dismissal of Count Three.  No. 06-11229, Rec.

2

Doc. 102 at 5. Thus, the Court dismisses Count Three of the SAC against Shaw, without prejudice as to the United States, and considers only Counts One and Two of the Relators' SAC. Defendants further assert in their Motion to Dismiss that this Court lacks jurisdiction over Count Two because Count Two is barred by the FCA's "first-to-file" rule, and adherence to the first-to-file rule requires dismissal of Count Two under Federal Rule of Civil Procedure 12(b)(1). No. 06-11229, Rec. Doc. 69-1 at 26-28.

## II. LAW AND ANALYSIS

### A. Standard of Review

To determine whether a complaint adequately pleads a cause of action, the Court construes the complaint liberally in favor of the plaintiff and accepts all well-pleaded facts as true. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002)); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A 12(b)(6) motion may be granted when a plaintiff fails to allege any set of facts that would entitle her to relief. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Instead, "well-pleaded factual allegations [should] determine whether [the pleading] plausibly give[s] rise to an entitlement of relief." *Id.* at 679.

Federal Rule of Civil Procedure 12(b)(1) "requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim." *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 255 (E.D. La. 2011). In determining whether to dismiss a complaint for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). All factual allegations in the plaintiff's complaint are accepted as true. *Id.*

Further, claims brought under the FCA must comply with the requirements of Federal Rule of Civil Procedure 9(b). *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). "[A] party must state with particularity the circumstances constituting fraud or mistake" when alleging fraud. FED. R. CIV. P. 9(b). Minimally, the plaintiff should state the "who, what, when, where, and how of the alleged fraud." *Steury*, 625 F.3d at 266 (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). The application of Rule 9(b) to complaints alleging fraud prevents "nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009).

Although Rule 9(b) represents an initial hurdle for plaintiffs, the Fifth Circuit has declined to adopt an inflexible standard when evaluating FCA complaints. Rule 9(b) is applied with "bite" and "without apology," but it "ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial." *Grubbs*, 565 F.3d at 185-86, 189. Rather, the Fifth Circuit "reach[es] for a workable construction of Rule 9(b) with complaints under the False Claims Act . . . that

4

effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud." *Id.* at 190. The rule is "context specific and flexible and must remain so to achieve the remedial purpose of the False Claim [*sic*] Act." *Id.*

## B. Count One

Count One of Relators' complaint alleges that Shaw "knowingly present[ed] . . . false or fraudulent claim[s] for payment" to FEMA in violation of 31 U.S.C. § 3729(a)(1) (2009). No. 09-4191, Rec. Doc. 34 at 25. To state an actionable claim under the FCA, "a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government." *Steury*, 625 F.3d at 267. Defendants assert that the complaint fails to meet the Rule 9(b) pleading standard because Relators fail to allege with particularity that (1) Shaw acted knowingly, (2) Shaw acted with falsity, and (3) Shaw's alleged fraudulent conduct was material. No. 06-11229, Rec. Doc. 69-1 at 17-25. This Court addresses each of these issues in turn.

### *1. Knowledge*

Under the FCA, the terms "knowing" and "knowingly" mean that an individual "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii) (2009). "[P]roof of specific intent to defraud" is not required. 31 U.S.C. § 3729(b)(1)(B).

Defendants assert there is no factual basis in the SAC that Shaw acted knowingly. No. 06-11229, Rec. Doc. 69-1 at 17-18. Further, Defendants claim there are no facts from which Shaw's knowledge of submitting fraudulent claims can be implied. *Id*. This Court disagrees. When

pleading fraud, "knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Relators' SAC clearly states that Shaw knowingly presented false claims. No. 09-4191, Rec. Doc. 34 at 25. Relators further allege that Shaw used an invoicing system and presented invoices to the Government that did not reveal what work was being completed. *Id*. at 26. Therefore, the actual work could not be cross-checked by FEMA. *Id.* Allegedly, this allowed Shaw to consistently double or triple bill for placement of the same THU. *Id.* While the SAC does not precisely state that Shaw engaged in this *particular* scheme knowingly, the explicit use of the word "knowingly" in Count One alone satisfies the pleading standard. *Id.* at 25.

### 2. *Falsity*

Relators allege that Shaw made either an express or implied false certification that it complied with the relevant laws, regulations, and contract terms as part of its request for payment. *Id.* at 26. Relators additionally allege that Shaw submitted false claims for payment by double or triple billing for work or billing for work not done. *Id.*

**a. False Certification Theory**

Defendants contend that Relators do not adequately allege an actionable false certification theory. No. 06-11229, Rec. Doc. 69-1 at 18-20. Relators allege that Defendants certified on its invoices that the work done was "proper" for payment, and that this certification implied compliance with Louisiana gas inspection obligations. No. 06-11229, Rec. Doc. 102 at 38. Relators allege particular knowledge that the government might have chosen not to pay for services with knowledge of the alleged infirm inspections. *Id*. at 39.

The Fifth Circuit has not yet recognized the FCA's implied-certification theory. *Steury*, 625 F.3d at 268. However, the court has "repeatedly" held that dismissal is appropriate where a

"contractor's compliance with federal statutes, regulations, or contract provisions was not a condition or prerequisite for payment under a contract." *Id.* "[A] false certification, without more, does not give rise to a false claim for payment unless payment is conditioned on compliance." *Id.*

While it is debatable whether Defendants made a false certification in this case, this Court cannot agree that Defendants' claims for payment were conditioned on compliance. This Court need not look any further than the description of FEMA's initial contract through its IA-TAC program described in Relators' SAC. No. 09-4191, Rec. Doc. 34 at 5. FEMA granted Shaw $950 million to install THUs before any work was done at all, and Defendants' contract ceiling was increased. *Id*. at 5-6. Task orders were for indefinite quantities and indefinite delivery of THUs. *Id.* at 6. The contract was flexible so as to meet the vast needs of individuals affected by emergency conditions. Relators' word that FEMA would not have paid if knowledge of Defendants' alleged noncompliance was available is not enough to meet the Fifth Circuit's standard for conditional compliance. Even considering Relators' experience as government employees, a statement that FEMA would not have paid with knowledge of noncompliance is conclusory. Relators' false certification theory is invalid.

### b. False Claims for Payment

Under the FCA, false claims are simply "those claims for money or property to which a defendant is not entitled." *United States v. Southland Management Corp.*, 326 F.3d 669, 674-75 (5th Cir. 2003). Here, Relators allege that Shaw billed the Government multiple times for work that was only completed once. No. 09-4191, Rec. Doc. 34 at 13. This allegation is an ideal model of a fraudulent claim under the FCA.

Despite several arguments asserted by Defendants that the SAC fails to plead falsity with particularity, this Court reiterates the flexible Rule 9(b) standard utilized by the Fifth Circuit. The

7

standard allows for the exposure of legitimate fraud while protecting defendants against frivolous suits. The *Steury* Court articulated that the "who, what, when, where, how" of the alleged fraud must be expressed. *Steury*, 625 F.3d at 266. *Steury's* construction of the pleading standard is fact-intensive; it requires relators to show only the plausibility of fraudulent activity.

Here, Relators have alleged that Shaw issued work orders for the placement of the same THUs in different locations. No. 09-4191, Rec. Doc. 34 at 13. In support of this allegation, Relators identify work order numbers, dates, and locations that suggest the same THUs were ordered to be placed in different locations on different days. *Id.* Next, Relators provide different invoice numbers submitted on different dates corresponding to work completed on the same THUs. *Id.* at 14, 16. Defendants assert that because Relators are unable to show any nexus between the work orders listed and any invoice that contained double or triple billing, the allegation that double or triple billing occurred is purely speculative. No. 06-11229, Rec. Doc. 69-1 at 30-31.

There are two problems with this argument. First, Relators are not obligated under Rule 9(b) to show any such nexus. Often, "the defendants will be in possession of the most relevant records . . . [including] internal billing records, with which to defend on the grounds that alleged falsely-recorded services . . . were [] billed for . . . ." *Grubbs*, 565 F.3d at 191. Here, the SAC consistently expresses that access to records in the exclusive control of Shaw will show exactly the nexus Defendants assert is lacking. No. 09-4191, Rec. Doc. 34 at 17, 22-23. It would be nonsensical to grant a motion to dismiss a claim because Relators have yet to acquire the documents to prove the claim. Such an order would not serve the purposes of Rule 9(b) or the FCA. Second, Defendants are ignoring the context of the complaint. Relators have governmental experience at the state and federal level. *Id.* at 3. Moreover, they have had experience with FEMA since 2006, and they

worked directly and specifically on FEMA's IA-TAC program. *Id.* These allegations of fraud have arisen based on their personal observations. *Id.*

Construing the complaint liberally in favor of the Relators under the Fifth Circuit's flexible Rule 9(b) standard, the Relators' description of Shaw's fraudulent scheme is a well-pleaded factual allegation giving rise to an entitlement of relief. *See Taylor*, 296 F.3d at 378; *Willard*, 336 F.3d at 379. The complaint states that THUs for which multiple placement work orders were issued were placed only once. No. 09-4191, Rec. Doc. 34 at 13. In addition, the SAC identifies multiple invoices submitted on different dates by Shaw for the same THUs. *Id.* at 16. While Relators do not have access to the records that may definitively link the work orders with the invoices, as those records are in Shaw's exclusive possession and control, it remains a plausible inference that Shaw presented a false bill to the Government. *Id.* at 17.

Both Relators and Defendants discuss in great detail whether Shaw was authorized to submit the work orders in question. No. 09-4191, Rec. Doc. 34 at 10-12; No. 06-11229, Rec. Doc. 102 at 21-22. However, this issue is outside the scope of whether Shaw's billing scheme as defined in the SAC expresses a proper fraudulent claim. By alleging that Shaw submitted these work orders, authorized or not, and invoiced the Government multiple times for work that was only completed once, Relators have satisfied the falsity element of the FCA.

### 3. *Materiality*

The Fifth Circuit has set forth two definitions of materiality under the FCA. In *United States ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 389 (5th Cir. 2008), the court defined a material claim as a claim "required to be made in order to receive the relevant government benefit." However, in *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 470 (5th Cir.

2009), the court clarified the definition of materiality by determining that if the "false or fraudulent statements have the potential to influence the government's decisions," then the materiality element is satisfied. The SAC satisfies both materiality tests. No. 09-4191, Rec. Doc. 34 at 14. Shaw submitted invoices to the government to receive payment, and if FEMA had known of the multiple invoicing for the same THUs, it is reasonable that the government's decisions regarding continued payment and contracting would be influenced. *Id.* Therefore, Relators have sufficiently pled each element of a FCA complaint.

**C. Count Two**

The second count of Relators' complaint alleges that (1) Defendants knowingly presented false or fraudulent claims for payment, approval, credit or reimbursement to FEMA in violation of 31 U.S.C. § 3729(a)(1) and 31 U.S.C. § 3729(a)(1) (2009) by charging FEMA for the installation of THUs that failed to comply with relevant federal, state, and local code and regulations; (2) Defendants' submission of invoices with inadequate documentation included false implied and explicit certifications in violation of § 3729(a)(2) and § 3729(a)(1)(B); and (3) Defendants received a windfall that should be refunded to the government under § 3729(a)(4), § 3729(a)(1)(D), and § 3729(a)(1)(G) because the United States paid for services that were inadequate, non-compliant and faulty. No. 09-4191, Rec. Doc. 34 at 26-27.

Defendants assert that the Fifth Circuit's "first-to-file" rule bars Count Two, and that even if the rule does not bar the Count Two Relators have not pled with particularity the elements of knowledge or falsity under the FCA. No. 06-11229, Rec. Doc. 69-1 at 26-35. Defendants additionally assert that Relators have not put forth a valid retention of overpayment or reverse false claim. *Id.* at 35-36. This Court discusses these issues below.

10

### *1. First-to-File Rule*

Defendants allege that Count Two of the SAC is barred under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the first-to-file rule denies the Court subject matter jurisdiction. No. 06-11229, Rec. Doc. 69-1 at 26-31.  The first-to-file rule is based on 31 U.S.C. § 3730(b)(5) (1994), which states: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  Thus, under the FCA, a court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) to hear a FCA complaint when the claim is related to a previously filed complaint.  The goal of the first-to-file rule is to "discourage opportunistic plaintiffs from filing parasitic lawsuits that merely feed off previous disclosures of fraud." *United States ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009) (citing *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Serv. Co.*, 336 F.3d 346, 351 (5th Cir. 2003)).  If the "later-filed complaint alleges the *same material or essential elements* of fraud described in a pending *qui tam* action," the first-to-file rule applies.  *Id.* at 378 (emphasis added).  The rationale is that once the government is on notice of a possible fraudulent scheme, it has enough information to discover related frauds.  *Id.*

For example, in *Branch*, the relator consulting firm was retained by an insurance company that issued Write-Your-Own flood policies funded by a government program.  *Branch*, 560 F.3d at 374.  The consulting firm brought a FCA suit alleging that insurers attributed flood policies to non-flood losses caused by Hurricane Katrina.  *Id.* at 375.  However, a separate relator, Rigsby, had already filed a complaint against the insurance company four months earlier alleging the same fraudulent conduct.  *Id.* at 374-75.  Relator Branch argued that the complaint was not barred by

11

relator Rigsby's broadly worded pleading because Branch detailed several specific instances where defendants overestimated flood damage. *Id.* at 375. The Fifth Circuit held that relator Branch's complaint was barred by the first-to-file rule even though Branch added factual details and geographic locations to the essential or material elements of the prior-existing Rigsby claim. *Id.* at 378. Based on this holding by the Fifth Circuit in the exemplar *Branch* case cited by both parties, a comparison between the first-filed complaint and the later-filed complaint must be conducted.

Here, the original pleading that triggers the first-to-file rule is the McLain complaint. No. 06-11229, Rec. Doc. 1, 53. The McLain complaint, filed three years prior to Relators' complaint, alleges that Shaw (among other Defendants) failed to follow state and local laws when they installed gas systems along with THUs. No. 06-11229, Rec. Doc. 1 at 16-17. Specifically, McLain claims that gas systems for all THUs were installed before Shaw and its subcontractors became permitted gas system installers, and before their installation employees passed Louisiana's gas safety competency examination. *Id.* McLain alleges that these installations were illegal, and the requests for payment based on these installations represent false claims to the government. *Id.*

Relators assert that the McLain complaint does not meet the Rule 9(b) particularity standard, and therefore it cannot be an obstacle under the first-to-file rule. No. 06-11229, Rec. Doc. 102 at 24-26. However, this Court has already determined that the McLain complaint meets the Rule 9(b) particularity requirements, mooting Relators' argument. Rec. Doc. 189. Thus, a comparison of the McLain and Relators' complaints must be conducted.

Defendants correctly point out that there are similarities between the two complaints. No. 06-11229, Rec. Doc. 69-1 at 37-38. Relevantly, (1) Shaw was required by contract to comply with all applicable state regulations and laws; (2) Shaw was obligated to obtain and maintain all gas

permits and licenses required by the State of Louisiana; (3) Shaw and its subcontractors failed to comply with applicable state regulations and laws regarding permits and licenses; (4) Shaw's installation of THUs was unlawful because it failed to comply with these laws; (5) Shaw submitted false claims for payment for the installation or activation of THUs that failed to comply with the contract and Louisiana law; and (6) Shaw falsely explicitly or impliedly certified compliance with the contract and Louisiana law. *Id.* These claims are similar enough in both complaints that Relators are barred from moving forward with an action based on any improper licensing of gas installers.

However, Defendants neglect to note the differences between the McLain complaint and Count Two of Relators' complaint. Specifically, Relators allege that Shaw unlawfully failed to provide *inspection and testing* of propane gas systems *both during and after installation*. No. 09-4191, Rec. Doc. 34 at 20-22. The only relationship between this claim and the McLain complaint is that they both deal with violations of IA-TAC contracts and Louisiana laws and regulations. Unlike *Branch*, where the later-filed complaint only included more details regarding the exact same fraudulent conduct, here Relators have alleged conduct distinct from the permit and license violations of McLain's complaint. *Id.* at 18-24, 26-27. Therefore, Relators' allegations in Count Two that allege Shaw defrauded the government by invoicing FEMA after failing to inspect and test gas systems are not barred by the first-to-file rule. *Id.* at 26-27.

### *2. Knowledge and Falsity*

Defendants claim that Count Two of the Relators' SAC should be dismissed under Rules 12(b)(6) and 9(b) because Relators have not alleged knowledge or falsity with particularity. No. 06-11229, Rec. Doc. 69-1 at 31-35. Again this Court disagrees. The SAC's claim that Defendants

acted knowingly in violation of the contract and Louisiana law satisfies the Rule 9(b) particularity requirement for the knowledge element of the FCA complaint.  No. 09-4191, Rec. Doc. 34 at 26.  Knowledge may be alleged generally.  *See* FED. R. CIV. P. 9(b).  Whether actual knowledge of alleged fraudulent conduct exists or whether there are sufficient facts in the complaint that imply knowledge is not the issue at the pleading stage.

Moreover, under *Steury's* "who, what, when, where, how" iteration of FCA falsity, the Relators plead a valid fraudulent claim.  *Steury*, 625 F.3d at 266.  The SAC alleges that Shaw (the who) knowingly did not comply with Louisiana gas laws by failing to inspect and test gas systems (the what) installed on Louisiana properties (the where) from September 2005 until at least November 2006 (the when).  No. 09-4191, Rec. Doc. 34 at 26.  The SAC further alleges that Shaw knowingly billed FEMA for these inspections and tests although they were not completed or completed inadequately (the how).  *Id.* at 27.  Thus, Relators have pled with particularity a valid claim under the FCA.

### 3. Overpayment and Reverse False Claim Theories

Relators allege that Defendants received a windfall from the government that was never repaid.  No. 09-4191, Rec. Doc. 34 at 27.  Relators base this overpayment theory on discrepancies between how much Defendants charged for hauling and installing THUs, among other tasks, and the historic and recent prices charged by other contractors and subcontractors for the same services.  No. 09-4191, Rec. Doc. 4 at 9.  Contrary to Defendants' assertion, this discrepancy alone is enough to plead with particularity that Defendants kept money not owed to them and certified falsely regarding those amounts.  No. 06-11229, Rec. Doc. 69-1 at 43.  Defendants may challenge this

alleged scheme or any other fraudulent conduct alleged by Relators after discovery "if billing [or any other] records discredit the complaint's particularized allegations." *Grubbs*, 565 F.3d at 191.

Relators' reverse false claim theory, however, is without merit. No. 09-4191, Rec. Doc. 34 at 27. Defendants are correct that Relators' allegation that Defendants "knowingly and improperly avoided or decreased their obligation to transmit [their] windfall back to the Government" is a mere conclusory statement for which no factual support is given. *Id*.; No. 06-11229, Rec. Doc. 69-1 at 44. Therefore, Relators have not pleaded a valid reverse false claim theory. This is not fatal, however, because they have already asserted a valid fraudulent scheme for Count Two as discussed above.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Count Three of the SAC is dismissed against Shaw, without prejudice as to the United States. No. 09-4191, Rec. Doc. 34.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss is DENIED. No. 06-112299, Rec. Doc. 69.

New Orleans, Louisiana, this 3rd day of September, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**