UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**U.S. ex rel. TERRY D. MCLAIN and J.**          **CIVIL ACTION**
**LEN HODGES**

**v.**                                                **NO. 06-11229**

**FLUOR ENTERPRISES, INC., SHAW**        **SECTION C**
**ENVIRONMENTAL, INC., and CH2M**
**HILL CONSTRUCTORS, INC.**

<u>**ORDER AND REASONS**</u>

This matter comes to the Court on the defendants', Fluor Enterprises, Inc. ("Fluor") and

CH2M Hill Constructors, Inc. ("CH2M"), motions to dismiss Counts 1, 2, 7, and 8, of relators',

Terry D. McLain and J. Len Hodges (collectively, "relators"), first amended complaint. Rec.

Docs. 306 & 309. Relators have both opposed and moved to strike these motions to dismiss. Rec.

Docs. 315, 317, 321, & 322. They have also filed a conditional motion to amend their complaint.

Rec. Doc. 337. Defendants oppose both the motion to strike and the motion for leave to amend.

Rec. Docs. 345, 346, 348, & 349. Finally, defendants Fluor and Shaw Environmental, Inc.

("Shaw") have also moved for summary judgment, which plaintiffs oppose. Rec. Docs. 335 &

352.

Having considered the record, the memoranda of counsel, and the law, the Court hereby,

and for the reasons that follow:

    1. DENIES relators' Motions to Strike,

    2. DISMISSES Fluor's Motion to Dismiss as MOOT,

3. DENIES CH2M's Motion to DISMISS,

4. GRANTS IN PART and DENIES IN PART Fluor's Motion for Summary Judgment,

5. GRANTS IN PART and DENIES IN PART Shaw's Motion for Summary Judgment,

6. DISMISSES Shaw's Motion to Strike Relators' Exhibits Filed With Relators' Opposition to Motion for Summary Judgment as MOOT, and

7. DISMISSES relators' Motion to File a Second Amended Complaint as MOOT.

## I. BACKGROUND

This case concerns the defendants' alleged failure to comply with Louisiana state liquefied petroleum (LP) safety statutes during the installation of temporary housing units (THUs) or travel trailers from September 2005 to January 2006 in the aftermath of Hurricanes Katrina and Rita. Rec. Doc. 53. Plaintiffs allege that FEMA "adopted and incorporated state licensing, permitting, and other safety-related standards governing the installation of travel trailers in Louisiana, as explicit requirements for entering and operating trailer installation contracts between FEMA and the Defendants." *Id.* ¶ 29. Defendants allegedly knew about these requirements but did not comply, repeatedly submitting invoices for payment and certifying that they were in compliance with the terms of the contract. *Id.* ¶¶ 49-64, 82-97.

Counts 1, 4, and 7 charge defendants with presenting false claims for payment in violation of 31 U.S.C. § 3729(a)(1) (False Claims Act, hereinafter "FCA" or "the Act").[1] *Id.* ¶¶ 99-103, 129-33. Counts 2 and 8 of the complaint charge Fluor and CH2M with making false

---

[1] Now codified as 31 U.S.C. § 3279(a)(1)(A).

certifications in order "to get false claims paid" in violation of 31 U.S.C. § 3729(a)(2).[2] *Id.* ¶¶ 104-08, 134-38. Relators claim that defendants' claims for payment were false both because they were not entitled to payment under the express terms of their FEMA contracts – a breach of contract theory - and because their failure to comply with LP gas regulations that existed for public safety rendered their installation contracts a nullity under Louisiana law – a lack of capacity to claim theory. *Id.* ¶¶ 24-25, 29.

A. Fluor and CH2M's Motions to Dismiss

In their motions to dismiss, Fluor and CH2M argue that Counts 1 and 7 should be dismissed because a simple breach of contract is not equivalent to a "false claim" and thus not a violation of the Act. Rec. Doc. 306-1 at 9-16; Rec. Doc. 309-1 at 9. They argue that Counts 2 and 8 should be dismissed because plaintiffs have failed to allege, as required by Fifth Circuit precedent, that certification of compliance was a pre-requisite to receiving payment from FEMA. Rec. Doc. 306-1 at 6-9; Rec. Doc. 309-1 at 3-8. For support, the defendants rely heavily on this Court's decision to dismiss a related action brought by a separate group of plaintiffs, "the Warders." Rec. Doc. 255. The Court found that the plaintiffs were required, and failed to, plead that certification of compliance was a pre-requisite to payment. *Id.* at 8. The Court thus dismissed all claims against Fluor and CH2M "based on false certification of compliance with Louisiana or local statutes or regulations governing liquefied petroleum handling or installation . . . ." *Id.* at 11. Finally, in its motion to dismiss, CH2M brings the Court's attention to a recent Fifth Circuit

---

[2] Now codified as 31 U.S.C. § 3729(a)(1)(B). Claim 5, which pleaded a violation of 31 U.S.C. § 3729(a)(2) against Shaw, was voluntarily dismissed without prejudice.

opinion, *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014), which it argues requires dismissal of all claims against it.

Plaintiffs have responded that the defendants' non-compliance was not a mere breach of contract but a violation of a requirement affecting their entitlement to be paid. Rec. Doc. 321 at 3-6. With respect to Counts 2 and 8, they contend that even though such certifications were not expressly required, the defendants' compliance (if not the certification of that fact) was a pre-requisite to payment and thus the certifications to that effect were material to FEMA's decision to pay the defendants. Rec. Doc. 321 at 13. In direct response to CH2M, relators urge that *Spicer* is factually inapposite and should therefore be disregarded by this Court in deciding whether to grant the motions to dismiss. Rec. Doc. 322 at 15.

### B. Relators' Motions to Strike and to Amend their Complaint

Relators have moved to amend their complaint should the Court find their pleading of false certification in the First Amended Complaint legally deficient. Rec. Doc. 337. Defendants oppose this motion on the grounds that the amended complaint does not remedy the deficiency. Rec. Doc. 345.

Relators have further moved to strike both motions to dismiss as repetitive of previous unsuccessful motions to dismiss. Rec. Doc. 315 &317. Defendants oppose this motion, arguing both that the plaintiffs have not met the high standard for a motion to strike and that this Court possesses broad discretion to reconsider its prior orders. Rec. Doc. 346.

### C. Fluor and Shaw's Motions for Summary Judgment

Fluor has moved for summary judgment, adopting the argument, first raised by CH2M, that the Fifth Circuit's opinion in *Spicer* forecloses the merit of relators' complaint. Rec. Doc. 335-2 at 5-9. Fluor also argues that it was entitled to compensation for non-conforming services under its FEMA contract, thereby precluding any possible FCA liability for providing non-conforming services. *Id.* at 9-13. Fluor argues, in the alternative, that it came into compliance with relevant LP regulations within the period of performance such that its services did conform to the contract. *Id.* at 13-18. Fluor argues, further in the alternative, that whether or not its services conformed was irrelevant to its entitlement to bill for costs in particular. *Id.* at 19. Finally, Fluor argues that Louisiana law has no bearing on its entitlement to payment under the FEMA contract, which is governed by federal common law. *Id.* at 19-24. Shaw has filed its own motion for summary judgment that raises this final argument. Rec. Doc. 351.

In opposition, relators maintain that *Spicer* is, for various reasons, inapposite. Rec. Doc. 355-1 at 1-5. They further argue that Fluor was not entitled to payments for non-conforming services in light of the absence of express language providing for such entitlement. *Id.* at 7-9. Finally, they argue in various ways that the LP regulations that Fluor allegedly violated were so central to the requirements for performance that there is no way they could not have affected Fluor's entitlement to either fixed fees or cost-reimbursement. *Id.* at 9-24. Relators have not responded to either Shaw or Fluor's choice of law argument.

## II. STANDARD OF REVIEW

A. Rule 12(b)(6) Dismissal

When considering a Rule 12(b)(6) motion to dismiss, the court must take the well-pleaded factual allegations of the complaint as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) (citations and quotation marksomitted). Plaintiff's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the content of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

B. Rule 56 Summary Judgment

Summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Regardless of whether it bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of '[discovery], together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is satisfied, the

nonmoving party must "designate specific facts showing there is a genuine issue for trial" using

evidence cognizable under Rule 56. *Id.* at 324. Material facts are those which "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

When considering whether any genuine issues of material fact exists, courts view the

evidence and inferences drawn from that evidence in the light most favorable to the non-moving

party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment

does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v.

Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Rather, "so long as the evidence in the record

is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive

at a verdict in that party's favor, the court must deny the motion." *Id.*

### III. LAW AND ANALYSIS

A. Relators' Motions to Strike

As an initial matter, relators argue that since this Court denied the defendants' motion to dismiss once

already (Rec. Doc. 189), defendants' motion to dismiss is more properly characterized as a motion for

reconsideration under Rule 54(b). *See, e.g.*, Rec. Doc. 315-1 at 2. The Court agrees.

"The general practice of courts in this district has been to evaluate Rule 54(b) motions to

reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter

or amend a final judgment." *Lightfoot v. Hartford Fire Ins. Co.*, No. 07–4833, 2012 WL 711842 at *2 (E.D. La. Mar. 5, 2012) (citation omitted). Reconsideration may be granted if "the motion is necessary to correct a manifest error of law or fact upon which the judgment is based." *Id.* (citation omitted).

Relators argue that defendants' motions to dismiss should be stricken because they have failed to satisfy this or any of the other Rule 59(e) standards. Rec. Doc. 315-1 at 2-7. However, the Court is not limited to the Rule 59(e) grounds in determining whether to entertain or grant a Rule 54(b) motion. "Under Rule 54(b), the district court 'possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *Id.* at *2 (quoting *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981)).

Reconsideration is appropriate in this case because, after denying the motions to dismiss relators' false certification claims, the Court granted motions to dismiss on identical claims against the same defendants in a related case. Rec. Doc. 255. Moreover, as the next section explains, in the time since this Court denied motions to dismiss these claims, the case law of the Fifth Circuit has become more apparently hostile to the theory of FCA liability that relators are attempting to pursue in this lawsuit. In light of the foregoing, relators' motions to strike will be DENIED.

## B. FCA Liability for Gratuitous Certifications of Contractual Compliance

Insofar as Counts 1, 2, 7 and 8 rely on a breach of contract theory, both Fluor and CH2M argue that these counts should be dismissed because a simple breach of contract is not equivalent to a "false claim" and thus not a violation of the Act. Rec. Doc. 306-1 at 9-16; Rec. Doc. 309-1 at 9. They argue that dismissal is required because relators have failed to allege, as required by Fifth Circuit precedent, that any certification of compliance was a pre-requisite to receiving payment from FEMA under their contract. Rec. Doc. 306-1 at 6-9; Rec. Doc. 309-1 at 3-8. They point to a recent Order in a consolidated case that ordered dismissal of all claims "based on false

certification of compliance with Louisiana or local statutes or regulations governing liquefied petroleum handling or installation . . . ." Rec. Doc. 255 at 11. Finally, they bring the Court's attention to a recent Fifth Circuit opinion, *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354 (5th Cir. 2014). Rec. Doc. 309 at 9; Rec. Doc. 335 at 5-9. In opposition, relators argue that defendants have misinterpreted *Spicer*, this Court's previous order, and their complaint. Rec. Doc. 322 at 15. They argue that compliance with LP gas statutes and regulations was too important to the lawfulness of the contract for failure to comply to be deemed a simple breach. Rec. Doc. 321 at 13.

The question that determines the viability of this entire FCA-based complaint is whether relators can plausibly allege and ultimately establish that defendants' claims for payment under their FEMA contract were false or fraudulent within the meaning of the FCA. Even if relators can point to certifications that were actually false, such certifications are not actionable unless they were material to a claim for payment that was itself false or fraudulent. *See United States v. Southland Management Corp.*, 326 F.3d 669, 675 (5th Cir. 2003) ("There is no liability under [the FCA] for a false statement unless it is used to get [a] false claim paid.").

In its previous Order and Reasons, this Court found that plaintiffs had sufficiently alleged a theory of why each defendant's invoices had been "false," in light of each defendant's knowing failure to comply with LP gas regulations. Rec. Doc. 189 at 11-13. Before determining whether current Fifth Circuit case law compels a different conclusion, it will be helpful to review how precedent has evolved from the time that the defendants first moved for dismissal.

In their first motions to dismiss, defendants relied heavily on *United States v. Southland Management Corp.*. In that case, the Fifth Circuit sitting *en banc* affirmed summary judgment on

a false certification claim against property owners under a housing assistance payment (HAP) contract. The contract required the owners to maintain the property in decent, safe, and sanitary condition as a condition of obtaining payments, but provided for a "corrective action period" before the government could "abate payment" during which the owner would still be entitled to payment. 326 F.3d at 675-76.

Defendants also cited *United States ex rel. Thompson v. Columbia/HCA HealthCare Corp.*, 125 F.3d 899 (5th Cir. 1997). That case involved Medicare reimbursement claims by FCA defendants who allegedly falsely certified compliance with anti-kickback statutes. *Id.* at 900-01. The district court found that allegations that defendants had submitted Medicare claims for services rendered in violation of the statutes, and falsely certified that the services were rendered in compliance, were insufficient to state a claim under the FCA.. *Id.* The Fifth Circuit reversed and remanded for further consideration and factual development, noting that while "claims for services rendered in violation of a statute do not *necessarily* constitute false or fraudulent claims under the FCA, . . . where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *Id.* at 902-03 (emphasis added).

Although the *Thompson* court framed the certification prerequisite as a sufficient, rather than necessary, condition to establishing FCA liability for a breach of a Government contract, the Fifth Circuit would later treat it as a necessary condition in *United States ex rel. Marcy v. Rowan*

*Companies, Inc.*, 520 F.3d 384 (5th Cir. 2008), which defendants did not cite, and *United States ex rel. Steury v. Cardinal Health, Inc. (Steury I)*, 625 F.3d 262 (2010), which they did. *Steury I* dealt with a claim that the defendant sold defective medical equipment to the Department of Veterans Affairs in violation of the warranty of merchantability. 625 F.3d at 267-68. Ms. Steury alleged that the defendant made implied certifications of compliance with the warranty by requesting payment for the defective equipment. *Id.* at 268. The Fifth Circuit affirmed dismissal of the complaint under Rules 12(b)(6) and 9(b), noting that "[n]ot every breach of a federal contract is an FCA problem." *Id.* at 265, 268. The *Steury I* court thus adopted and applied a "prerequisite requirement," whereby a "contractor's mere request for payment does not fairly imply [a certification of compliance with a statute, regulation, or contract provision]," "unless the Government conditions payment on a certification of compliance." *Id.* at 268.

Examining the Federal Acquisition Regulations (FAR), the *Steury I* court found "no indication that the Government conditioned payment for the [goods] on a certification that the [goods] complied with the warranty of merchantability." *Id.* at 269. It noted that "the Government's ability to seek a range of remedies in the event of noncompliance" tends to undermine any inference that certification is required. *Id.* at 270. Thus, it held that dismissal of Steury's complaint was appropriate. *Id.*

Citing *Steury I*, *Southland Management*, and *Thompson*, the defendants argued in their original motions that relators' complaint should be dismissed because relators failed to plead that the government conditioned payment on the claimant's certification of compliance and because

48 C.F.R. § 52.246-5(d) – part of the FAR – gave the Government the ability to compel corrective action or reduce payment for uncorrectable work performed under the contract. Rec. Doc. 89-1 at 16-17; Rec. Doc. 99-1 at 16; Rec. Doc. 87-1 at 14-15. However, this argument failed to acknowledge important caveats to the holdings of *Southland Management* and *Steury I*, in particular. As the Court explained in its original Order and Reasons denying the motions to dismiss, the *Southland* court had the benefit of a fully developed summary judgment record in determining that the HAP contract's payment abatement procedures foreclosed any possible FCA liability. Rec. Doc. 189 at 13. In this case, although the FAR prescribed a similar corrective process in 48 C.F.R. 52.246-5(d), the details of the process, and its ramifications for entitlement to particular payments claimed, were murkier. The Court was not inclined to read it as a categorical bar to FCA liability without the benefit of a better-developed factual record, such as that which the *Southland Management* court had at its disposal. *Steury I*, if anything, validates this more conservative approach. If "the Government's ability to seek a range of remedies in the event of noncompliance" under the FAR automatically negated any possible FCA liability, it stands to reason that the Fifth Circuit would have come to that conclusion in *Steury I*, rather than stating that such an ability merely "suggests that payment is not conditioned on a certification of compliance." *Steury I*, 625 F.3d at 270.

Moreover, in *Steury I*, even as the Fifth Circuit embraced the prerequisite requirement, it acknowledged certain plausible alternate theories of FCA liability in cases involving the delivery of nonconforming goods and services under a Government contract. It acknowledged a

"worthless goods" theory that other courts had applied. *Id.* Significantly, for purposes of this case, the court held open the possibility that "a knowing attempt to deceive the Government about the nature of commercial items may violate the FCA," while noting that Ms. Steury had not attempted to plead such a claim. *Id.* (citing *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1008 (5th Cir. 1972)). Ultimately, although the *Steury I* court affirmed dismissal, it remanded the case to the district court with instructions to consider proposed remedial amendments to Ms. Steury's complaint. *Id.* at 270-71.

Because relators, unlike Ms. Steury, were attempting to plead a knowing deception regarding the nature of their commercial services using express certifications, the Court did not consider *Steury I* to be persuasive or controlling authority requiring dismissal with prejudice. *Cf.* Rec. Doc. 189 at 16 ("Unlike Steury, the plaintiffs' amended complaint makes clear that Fluor and CH2M's numerous certifications of compliance were not made independent of claims for payment, but rather as part of claims for payment themselves."). Therefore, considering *Thompson*, *Southland Management Corp.*, and *Steury I*, the Court determined that relators had successfully alleged that defendants' invoices were false or fraudulent.

Shortly after this Court's decision to allow the relators' complaint to move forward, the Fifth Circuit released a second opinion in *Steury*. On remand, Ms. Steury had sought to amend her complaint to allege that the defendant Cardinal had expressly warranted that its goods were merchantable; that Cardinal's contract required implicit certification; and that merchantability was a material condition of the contract. *United States ex rel. Steury v. Cardinal Health, Inc.*

*(Steury II)*, 735 F.3d 202, 206 (5th Cir. 2013) (per curiam). The *Steury II* court found that these allegations were too conclusory to be regarded as well pleaded and taken as true. *Id.* at 206-07. Further, the court found the vagueness of the complaint inexcusable given the posture of the litigation. *Id.* at 207. The court concluded by reaffirming its embrace of the prerequisite requirement and rejecting Ms. Steury's attempt to leverage the aforementioned worthless goods theory as insufficiently well-pleaded. *Id.*

Judge Higginson, concurring, urged caution in adopting the prerequisite requirement wholesale as it lacked any foundation in the text of the FCA, and threatened to obscure the traditional statutory distinction between false and fraudulent claims and eliminate liability altogether for the latter category. *Id.* at 208-11. Fraud, he explained, encompasses a "broader range of deceptive conduct" than the factually false statements contemplated in the false claims portion of the statute. *Id.* at 209. "[T]o avoid foreclos[ing] FCA liability in situations that Congress intended to fall within the Act's scope," rather than adopt the a-textual prerequisite requirement, Judge Higginson proposed a return to the distinction between false and fraudulent conduct, using strict enforcement of the Act's materiality and scienter requirements. *Id.* at 211.

Finally, only months ago, the Fifth Circuit published the opinion in *United States ex rel. Spicer v. Westbrook*. *Spicer* dealt with the delivery of Mine Resistant Ambush Protected vehicles ("MRAPs") under a defense contract that required the contractor to apply Chemical Agent Resistant Coating ("CARC") and further, pursuant to FAR clause 52.246-2, to inspect the MRAPs prior to delivery for compliance with contract specifications, and to keep records of the

inspection. 751 F.3d at 359. Mr. Spicer argued that delivery of these MRAPs without CARC constituted a false certification of compliance with the MRAP contract. *Id.* at 365. The Fifth Circuit did not agree.

In the first test of its prerequisite requirement since *Steury II*, rather than heed Judge Higginson's words of caution or make allowances for possible alternate theories of FCA liability as it had done in *Steury I*, the Fifth Circuit doubled down: "The linchpin of an FCA claim resting on the violation of a statute or regulation . . . is the requirement of a certification of compliance." *Id.* Using this statement as its only guiding principle, the Fifth Circuit disposed of Spicer's complaint. Like Ms. Steury, Mr. Spicer had failed to allege that certification of compliance with FAR 52.246-2 was a prerequisite to payment. *Id.* at 366. As in *Steury I*, the Government's ability to seek alternative remedies under the FAR, which it had actually exercised against the *Spicer* defendants, belied any notion that certification of compliance was a prerequisite. *Id.* It is this precedent that the Court must consider in evaluating whether to dismiss or grant summary judgment on relators' claims.

Nowhere in their First Amended Complaint do relators allege that certification of compliance was a prerequisite to obtaining payment. *See generally* Rec. Doc. 53. In response to Fluor's motion for summary judgment, they have come forward with no evidence tending to support the inference that such certifications were required to obtain payment under defendants' FEMA contracts. Rec. Doc. 355. They readily concede that the opposite was true. Rec. Doc. 321 at 7 ("The Relators/Plaintiffs here do not allege in their [complaint] that FEMA required Fluor (or any other Defendant here) to make any particular express certification . . . on Fluor's invoices to FEMA."). After *Spicer*, this would seem fatal to the complaint.

Relators resist this conclusion in two different ways. First, they argue that *Spicer* is inapposite. They contend that it does not apply to their direct false claims causes of action because Spicer only appealed his two false certification causes of action that the district court

dismissed. Rec. Doc. 355-1 at 2-3. They also argue that it should not govern their false

certification causes of action because, like its predecessors in *Steury* and *Marcy*, *Spicer* only

addressed *implied* certifications of compliance, as opposed to the express certification at issue

here. *Id.* at 2-4. Neither of these arguments can be squared with the opinions themselves.

Although the *Spicer* court first analyzed the two claims of false certification in violation of § 3729(a)(1)(B) that Spicer had directly appealed, its analysis reached other parts of the FCA. In a footnote, the Spicer court noted that its analysis would be the same for Spicer's direct false claims cause of action under former § 3729(a)(1) and conspiracy cause of action under former § 3729(a)(3) and current § 3729(a)(1)(C). 751 F.3d at 367 n.16. Moreover, the court concluded that the district court had not erred in denying Mr. Spicer leave to amend his complaint, which "purport[ed] to assert claims against Navistar Defense under the false claim provision, false statement provision, and the conspiracy provision," because he still failed to allege that certification of compliance was a prerequisite to payment. *Id.* at 364, 367-68. Thus, one fair reading of *Spicer* is that, generally speaking, a simple breach of contract combined with a false certification of compliance with that contract cannot create any species of FCA liability unless some certification of compliance was a prerequisite to payment, especially where, as here, the FAR's corrective action/payment reduction process is involved.

Next, while *Steury*, *Marcy*, and *Spicer* deal with alleged implied certifications, the Fifth

Circuit has been unequivocal about the fact that the prerequisite requirement applies to both

express and implied certifications of compliance:

> As already discussed, when payment is not conditioned on a certification of compliance, it is not fair to infer such certification from a mere request for payment. *Similarly, even if a contractor falsely certifies compliance (implicitly or explicitly) with some statute, regulation, or contract provision, the underlying claim for payment is not "false" within the meaning of the FCA if the contractor is not required to certify compliance in order to receive payment.*

*Steury I*, 625 F.3d at 269 (emphasis added). Thus, relators' proposed distinction between express and implied certification cases lacks any foundation in the case law.

In the end, relators' main opposition to dismissal and summary judgment is a recapitulation of Judge Higginson's *Steury II* concurrence: the sweeping version of the prerequisite requirement that the defendants are advocating, and that the Fifth Circuit seemed to apply in *Spicer*, lacks foundation in the text of the FCA and threatens to eliminate FCA liability for conduct that the Act was meant to cover. Rather than embracing this non-textual prerequisite requirement, relators argue that the court should focus on the express certifications identified and their materiality, i.e., natural tendency to influence the payment decision. Rec. Doc. 321 at 7, 10. They present the declarations of FEMA officials that show that the defendants' alleged false certifications of contractual compliance had this tendency. Rec. Doc. 355-4.

Defendants might respond that this argument misses the point of *Southland*, *Steury I* and *II*, and *Spicer*. Those cases recognize that whether a <u>certification</u> is false and whether a <u>claim</u> is false are two separate issues. *Cf. Southland Management Corp.*, 326 F.3d at 675. Notwithstanding whether false certification is express or material, it will not render a <u>claim</u> false unless some certification was a prerequisite to payment of the claim. *See Spicer*, 751 F.3d at 365-66 ("Although we have previously indicated that the prerequisite requirement derives from the 'materiality' element of an FCA claim . . . we have also reasoned, with greater precision, that the term 'material' . . . does not fully encompass the requirement . . . .") (citing *Steury I*, 625 F.3d at 269). Any other rule, it is argued, would be unfair to contractors. *Id.*

Relators might reply that, regardless of whether a false certification is gratuitous or required, it can and should render a claim for payment fraudulent, when (a) the defendant is not entitled to payment for the goods or services for which payment is claimed, (b) the certification knowingly and materially misrepresents the nature of those goods or services, and (c) payment is made in reliance on that certification. This was effectively the holding in *Aerodex*,  which found that FCA liability could be imposed for mislabeling non-conforming ball bearings delivered pursuant to a Government contract. 469 F.2d at 1008. *Aerodex*  has not been expressly overruled in the Fifth Circuit, and was cited to as good law as recently as *Steury I*, 625 F.3d at 270.

It may ultimately fall to a different court to reconcile *Spicer* and *Aerodex*. However, until *Aerodex* is expressly overruled or abrogated, this Court will continue to apply it as good law. Regardless of whether an express statement of compliance is required, FCA liability can lie for "a knowing attempt to deceive the Government about the nature of commercial [services]" provided pursuant to a Government contract. *Steury I*, 625 F.3d at 270 (citing *Aerodex*, 469 F.2d at 1008). However, under this theory, a relator must successfully plead and ultimately prove that the defendant responsible for the false certification had a specific intent to defraud the federal government. *See Steury II*, 735 F.3d at 209 (discussing fraud's intent requirement); *Aerodex*, 469 F.2d at 1007 ("The law is settled in this Circuit that to show a violation of the False Claims Act the evidence must demonstrate 'guilty knowledge of a purpose on the part of [the defendant] to cheat the Government'"). The qui tam relator must also show that the federal government was injured-in-fact as a result of a defendant's fraud. *See, e.g.*, *United States ex rel. Kelly v. Boeing*

*Co.*, 9 F.3d 743, 748 (9th Cir. 1993) (finding that injury-in-fact to the Government is required for standing in qui tam cases); *cf. United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 380 (5th Cir 2004) (finding injury was adequately pled when plaintiff alleged that the Government paid the full amounts of the claims, unaware of their falsity). With this understanding, the Court will analyze the sufficiency of the allegations against CH2M and the evidence and allegations against Fluor to resolve their respective motions.

*1. Fluor*

  Relators allege that Fluor became aware of the requirement that it and its subcontractors obtain permits with the state LP gas commission before installing LP gas-equipped trailers as early as January 2006. Rec. Doc. 53, ¶ 51. It is alleged that despite this knowledge, and the knowledge that it and its subcontractors lacked such permits, Fluor continued to invoice FEMA for millions of dollars in costs for non-permit trailer installations until December 2006, even after receiving an email from FEMA regarding the permits in February 2006 and pleading "no-contest" to a criminal charge of violating Louisiana's gas permit statute in May 2006. *Id.* ¶ 52-65. Fluor is alleged to have misled FEMA by submitting invoices and expressly certifying on each invoice that each was "in accordance with the terms of the contract," which required compliance with Louisiana law. *Id.* ¶ 56, 64.

  In the context of Fluor's actual agreement with FEMA, these factual allegations do not allow for a fair inference that Fluor defrauded the Government of funds. Under Fluor's contract with FEMA, it was entitled to prompt payments for costs invoiced in amounts approved by the

FEMA's Contracting Officer. Rec. Doc 355-5 at 15, 50. However, it does not follow that these invoices were relied upon in a vacuum. The trailer installations were performed pursuant to a task order – Task Order 20 – with a "Period of Performance" that lasted until October 31, 2006, during and perhaps even after which time, FEMA was entitled to question the way the work was being performed and compel corrective action or reduce payment. Rec. Doc. 335-6 at 160. It was further contemplated that Fluor would bill as the work was completed. Rec. Doc. 335-6 at 83; Rec. Doc. 335-5 at 30. Even assuming that Fluor was never, in any sense, "entitled" to bill for unlawful installations, it is clear that the Government had contractual recourse for wrongful billing.

    Under the circumstances, something more than a boilerplate certification of compliance on an initial invoice is required to plead actual fraud; relators must plead that Fluor successfully misrepresented the nature of its services throughout the corrective action/payment reduction process. Otherwise, it would be too likely that the Federal Government availed itself of free corrective action before deciding to pay Fluor the entirety of amounts billed to allow the complaint to move forward. The allegations of the complaint are thus deficient as against Fluor.

    Moreover, even assuming relators could properly allege fraud, Fluor has demonstrated that there is no genuine issue of material fact regarding whether Fluor actually misled FEMA to the Government's financial detriment. Relators admit that Fluor obtained the permits required to perform state-mandated LP gas tank inspection and testing on April 27, 2006. Rec. Doc. 53 ¶ 59. After Fluor pleaded "no contest" to violating the State's LP gas laws in May 2006, it entered into

a settlement with the LPGC whereby it agreed to leak and pressure test LP gas tanks in trailers that it and its subcontractors were installing pursuant to Task Order 20. Fluor did not actually certify to FEMA that all of the work required by Task Order 20 was complete until November 1, 2006, one day after the period of performance ended and after it had complied with the terms of the settlement. This certification included a line item for "LP gas inspections." The technical representative for FEMA's contracting officer confirmed receipt and acceptance of Fluor's services.

Relators argue that this settlement agreement, and FEMA's subsequent acceptance of the services rendered, are irrelevant to determining liability because Fluor had a non-negotiable contractual duty to follow the letter of the law. Rec. Doc. 355-1 at 15. This argument in part implicates their contractual nullity theory, addressed below. However for the purposes of this breach of contract theory, there can be no liability for false certification of a fraudulent claim as long as the United States was made aware of the terms of the settlement.

To show false certification liability relators would need to come forward with evidence from which a reasonable trier of fact could infer that Fluor misled FEMA regarding the nature of its services in their November 1, 2006 close-out letter. They point to no such evidence in their opposition to summary judgment. Nor do they argue that additional discovery will lead to such evidence. For these reasons, summary judgment will enter against relators as to the breach of contract theories pleaded in Counts 1 and 2 of the First Amended Complaint.

*2. CH2M*

The allegations against CH2M are similar to those against Fluor. Relators allege that CH2M became aware of statutory requirements for LP gas tank installation in February 2006 but continued to install and bill FEMA for non-conforming installations until November 2007, despite their knowing failure to comply. Rec. Doc. 53, ¶¶ 86-98. They allege that CH2M falsely certified on the invoices for these installations that "amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract." *Id.* ¶ 93. Were these the only allegations presented, the Court would grant CH2M's motion to dismiss, as relators' right to recover could not be deemed more than speculative. However, relators also allege that on or about April 10, 2006, CH2M executive David Knowles represented to FEMA's Stephen Reams that "all of our subcontractors who deal with propane have met Louisiana Stat requirements" and further that CH2M used this statement to fraudulently avoid re-payments that FEMA might have otherwise claimed. *Id.* ¶ 94.  This is a serious allegation and, even in light of the FAR's standard corrective action/reduction procedures, would tend to support a cause of action for false certification. CH2M's motion to dismiss will therefore be DENIED.

C. Contractual Nullity/Eligibility to Collect

Fluor and Shaw argue that summary judgment should enter against relators on Counts 1, 2, and 4 because Louisiana State law could not have possibly rendered its contract with FEMA absolutely null. Rec. Doc. 335-2 at 20; Rec. Doc. 351. Although defendants have styled their motions as motions for summary judgment, they have not cited any affidavits or discovery to demonstrate the absence of a genuine issue of fact on this issue. Their argument is entirely legal,

assuming as true those facts that have been pleaded in the petition. See, e.g., Rec. Doc. 351-1 at 7 n.17. Accordingly, the Court considers this argument under the standard of review applicable to motions to dismiss for failure to state a claim.

In addition to claiming FCA liability based on breach of contract, relators' complaint alleges that the LP gas statutes and regulations were "laws enacted for the protection of the public interest" (La. Civ. Code Ann. art. 7); Rec. Doc. 53 ¶ 24. As such, they claim that defendants' failure to comply with these laws rendered the contract a nullity, i.e. defendants were not entitled to any payment under Louisiana law. *Id.* ¶ 25. The gist of relators' argument is that defendants' claims for payment were *de jure* false because the voidness of their FEMA contracts negated any possible entitlement to claim payment *ab initio*. Rec. Doc. 355-1 at 13.[1] They argue that, because the LP gas statutes and regulations exist for the public's safety, a violation cannot be considered an ordinary breach of contract. *Id.* Rather, it implicates their eligibility to claim payments under the contract in the first place. *Id.*

*1. Louisiana Law and Preemption*

In their motions, Fluor and Shaw argue that "Louisiana law does not govern the interpretation, application, termination and declaration of the nullity of a federal contract." *Id.* The Court agrees. Certain areas of law involving "'uniquely federal interests' . . . are so

---

[1] As stated above, this is a theory of FCA liability independent from relators' fraudulent breach of contract theory, not merely a mechanism for calculating damages. To establish fraudulent breach, relators need not establish that any of the defendants' agreements with FEMA or its subcontractors were void, null, or unenforceable. Insofar as there was fraud, damages would be equal to the amount "wrongfully paid to satisfy the claim." *Aerodex*, 469 F.2d at 1011.

committed by the Constitution and laws of the United States to federal control that state law is

pre-empted and replaced . . . by federal law of a content prescribed (absent explicit statutory

directive) by the courts—so-called 'federal common law.'" *Boyle. v. United Technologies*

*Corporation*, 487 U.S. 500, 504 (1988) (citations omitted). Hence, "obligations to and rights of

the United States under its contracts are governed exclusively by federal law." *Id.* (citations

omitted).

Relators' argument that state law renders defendants' federal contracts with FEMA a

"nullity" therefore has no merit. Relators cite a number of cases in which federal courts refused

to enforce contracts requiring payments to "unlicensed service providers" on public policy

grounds; however, none of the cases involves a federal contract. *See, e.g.*, *U.S. Nursing Corp. v.*

*St. Joseph Medical Center*, 39 F.3d 790, 792-95 (7th Cir. 1994); *Paul Arpin Van Lines Inc. v.*

*Universal Transportation Services*, 988 F.2d 288, 289-91 (1st Cir. 1993). Moreover the bar for

absolute nullity is higher than the bar for unenforceability. *See United States v. Jamieson Science*

*and Engineering, Inc.*, 214 F.3d 1372, 1377-78 (D.C. Cir. 2000) (declining to find false a claim

made in violation of federal restrictions on contracting amid conflicts of interest). This claim has

no merit.

### 2. False Eligibility for Payment

Citing *United States ex rel. Riley v. St. Luke's Hospital*, relators argue that claims for

federal payments made based on services by a provider who does not have a state-required

license are inherently false. However, *Riley* and the other cases cited by relators all address FCA

liability for unlawful Medicare billing by unqualified providers. *See Riley*, 355 F.3d at 378;

*United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003); *U.S. ex rel. Putnam v. Eastern Idaho*

*Reg. Med. Center*, 696 F.Supp.2d 1190 (D. Idaho 2010); *U.S. ex rel. Gonzalez v. Fresnius*

*Medical Care*, 571 F.Supp.2d 758 (W.D. Tex. 2008); *United States v. Sazama*, 88 F.Supp.2d

1270 (D. Utah 2000); *U.S. ex rel. Sanders v. East Alabama Healthcare Authority*, 953 F. Supp.

1404 (M.D. Ala. 1996). Relators' proposed analogy to the role of state licensing in Medicare

billing is strained at best.

    In the Medicare context, state licensing requirements are incorporated directly into the

statutes that govern eligibility to bill as a provider. 42 U.S.C. §1395y(e). By contrast, legal

eligibility to participate in the FEMA contract did not depend on having a particular permit,

license or certification, per se.  As Shaw notes in its motion, eligibility depended on an

"affirmative determination of responsibility" by a duly empowered contracting officer. 48 C.F.R.

§ 9.103; *see* 41 U.S.C. § 3101 (adopting General Services contracting regulations for executive

agency contracting). A determination of responsibility must be made by reference to eight

general criteria in addition to any appropriate special criteria set forth in the solicitation. 48

C.F.R. §§ 9.104-1, 9.104-2. It seems plausible that state licensing was relevant to the applicable

criteria in this case. *Cf. id.* § 9.104-1(g) (listing qualification and eligibility "to receive an award

under applicable laws and regulations" as a general criteria). Nevertheless, because the

contracting officer has "wide discretion" in making responsibility determinations, *Bender*

*Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002), a mere

showing that the defendants lacked installation permits would not necessarily indicate lack of

eligibility or entitlement to payment. Relators would have to show that the defendants

misrepresented their qualifications in this regard to the contracting officer, leading him to

determine that they were eligible.  Relators have not alleged that the defendants misled the

FEMA contracting officer regarding their desire, ability, or willingness to obtain the relevant

licensing. Accordingly, relators fail to support a claim for false eligibility for payment based on

actual ineligibility for payment.

*3. Absolute Nullity of Subcontracts*

Finally, relators argue that the absolute nullity of the defendants' agreements <u>with their</u>

<u>subcontractors</u> under state law rendered their claims for cost reimbursement legally false under

their federal contract within the meaning of the FCA. Rec. Doc. 356-1 at 2. Although relators

have not properly pleaded this theory, it has plausible merit based on the well-pleaded allegations

of the complaint.

Article 2030 of the Louisiana Civil Code provides that "[a] contract is absolutely null

when it violates a rule of public order, as when the object of a contract is illicit or immoral." A

null contract may not be confirmed or invoked by any person. La. Civ. Code art. 2030.

"Generally, where the law contains a penalty for a failure to obtain a license it implies a

prohibition to collect on the contract entered into or work done." *United Stage Equipment v.*

*Charles Carer & Co.*, 342 So. 2d 1153, 1155 (La. App. 1 Cir. 1977); *see also* La. Civ. Code art.

7 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the

public interest. Any act in derogation of such laws is an absolute nullity."). Thus, "Louisiana courts have long recognized that statutory licensing requirements 'were enacted to protect an interest vital to the public order,' and have relied on these Civil Code articles to invalidate contracting agreements entered into with unlicensed contractors." *Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 259 (5th Cir. 2009) (citing *Hagberg v. John Bailey Contractor*, 435 So. 2d 580, 584-85 (La. App. 3 Cir. 1983).

The Court does not agree with Fluor that the rule of absolute nullity only applies to state contractors' licenses, and not permits, of which a single contracting job may require many. *See* Rec. Doc. 335-2 at 22-23. The case law does not distinguish between contractors' licenses and individual permits for purposes of public safety nullification. In *Sunbelt Security Services, Inc. v. Delahoussaye*, the Fourth Circuit did not find that failure to obtain permits cannot result in contractual nullity; that court simply concluded that the permit requirements at issue were not sufficiently tied to public order to result in nullity. 572 So.2d 598, 603-04 (La. App. 4 Cir. 1990) (The fact "[t]hat lessees did not have the required permit and were disallowed their 1987 occupational license pending acquisition of that permit does not render the contract violative of public order and absolutely null."). By contrast, in *Davis v. Town of St. Gabriel*, the First Circuit found that an agreement in derogation of state building permit requirements was an absolute nullity. 809 So.2d 537, 547 (La. App. 1 Cir. 2002).

Nevertheless, relators must do more than show that defendants entered into contracts with their subcontractors when those subcontractors lacked the required permits. In *East Tangipahoa*

*Dev. Co., LLC v. Bedico Junction, LLC*, 5 So. 3d 238 (La. App. 1 Cir. 2008) and *River Cities Construction Co. v. Barnard & Burk, Inc.*, 444 So. 2d 1260 (La. App. 1 Cir. 1984), in which (sub)contractors faced contractual obligations to obtain necessary permits before undertaking to perform the contract, the First Circuit treated the (sub)contractors' failure to obtain permits as an ordinary breach of contract. *See East Tangipahoa Dev.*, 5 So. 3d at 248; *River Cities*, 444 So. 2d at 1265-66. This is significant because a court can and should take notice of contractual nullity on its own motion. La. Civ. Code art. 2030. The implication of these opinions is that it does not violate public policy to enter into a contract with a pre-permit contractor, as long as the contract requires the contractor to obtain the necessary permits before the work begins.

  To state a meritorious FCA claim based on the nullity of these subcontracts, relators must plead sufficient facts to allow for a plausible inference that defendants failed <u>in their subcontracts</u> to require their subcontractors to obtain the required permits.  It is not sufficient that they simply failed to enforce the contractual provisions calling for adherence to state law. The current complaint does not contain the necessary allegation or sufficient facts to support it. Rec. Doc. 53, ¶ 24-25. The Court will grant relators 30 days leave in which to accomplish this amendment. In doing so, the Court notes that insofar as defendants would argue that their subcontractors were entitled to bill for costs and labor even if their contract was void, *see Tradewinds*, 578 F.3d at 260, defendants might still be liable for any invoices that exceeded that amount.

  The Court has not considered relators' summary judgment affidavits in reaching this conclusion. Therefore, Shaw's Motion to Strike relator's summary judgment affidavit will be

DISMISSED AS MOOT. Rec. Doc. Similarly, in light of the foregoing, relator's Conditional

Motion to Amend the Complaint will be DISMISSED AS MOOT. Rec. Doc. 337.

IT IS ORDERED that:

1. Relators' Motions to Strike is hereby DENIED. Rec. Doc. 315 & 317.

2. Defendant Fluor's Motion to Dismiss Counts 1 and 2 of the First Amended Complaint

is DISMISSED AS MOOT. Rec. Doc. 306.

3. Defendant CH2M's Motion to Dismiss Counts 7 and 8 of the First Amended

Complaint is DENIED. Rec. Doc. 309.

4. Defendant Fluor's Motion for Summary Judgment is GRANTED IN PART and

DENIED IN PART as set forth above. Rec. Doc. 335. Relators' allegations of fraudulent breach

are DISMISSED. Relators shall file a second amended complaint within thirty (30) days of this

order, setting forth specific facts showing that Fluor failed to obligate its subcontractors to

comply with state LP gas statutes and regulations. Failure to comply with this order will result in

involuntary dismissal of Counts 1 and 2.

5. Plaintiffs' motion to file a Second Amended Complaint is DISMISSED AS MOOT.

Rec. Doc. 337.

6. Shaw's Motion for Summary Judgment is GRANTED IN PART and DENIED IN

PART. Rec. Doc. 351. Relators shall file a second amended complaint within thirty (30) days of

this order, setting forth specific facts showing that Shaw failed to obligate its subcontractors to

comply with state LP gas statutes and regulations. Failure to comply with this order shall result in

involuntary dismissal of Count 4.

       7. Shaw's Motion to Strike Relators' Exhibits Filed With Relators' Opposition to Motion

for Summary Judgment is DISMISSED AS MOOT. Rec. Doc. 359.


       New Orleans, Louisiana this 13th day of November, 2014.


                                        **HELEN G. BERRIGAN**
                            **UNITED STATES DISTRICT JUDGE**