UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U.S. ex rel. TERRY D. MCLAIN and J.                    CIVIL ACTION
LEN HODGES

v.                                                     NO. 06-11229

FLUOR ENTERPRISES, INC., SHAW                          SECTION C
ENVIRONMENTAL, INC., and CH2M
HILL CONSTRUCTORS, INC.


<u>ORDER AND REASONS</u>

Before the Court are several motions by the parties. These are:

- Motion for Summary Judgment against CH2M Hill by the Relators (Rec. Doc. 380)
- Motions to Strike the Relators' Amended Complaint by Fluor (Rec. Doc. 383) and CH2M Hill (Rec. Doc. 385)
- Motion to Dismiss or for Partial Summary Judgment by Shaw (Rec. Doc. 387)
- Motion for Leave to File A Second Amended Complaint by the Relators (Rec. Doc. 388)
- Motion to Dismiss or, in the alternative, to Strike by Shaw (Rec. Doc. 390)
- Motion for Summary Judgment by Fluor (Rec. Doc. 393)
- Cross Motion for Summary Judgment by CH2M Hill (Rec. Doc. 436)

All of the motions are opposed. The motions are before the Court on the briefs and

without oral argument. For the reasons discussed herein, the Court:

- DENIES the Motion for Summary Judgment against CH2M Hill by the Relators (Rec. Doc. 380)

- GRANTS IN PART and DENIES AS MOOT IN PART the Motion to Strike Relators' Amended Complaint by Fluor  (Rec. Doc. 383)

- DENIES the Motion to Strike Relators' Amended Complaint by CH2M Hill (Rec. Doc. 385)

- GRANTS IN PART and DENIES IN PART the Motion to Dismiss or for Partial Summary Judgment by Shaw (Rec. Doc. 387)

- GRANTS the Motion for Leave to File A Second Amended Complaint (Rec. Doc. 388)

- DENIES the Motion to Dismiss or, in the alternative, to Strike by Shaw (Rec. Doc. 390)

- GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment by Fluor (Rec. Doc. 393)

- GRANTS the Cross Motion for Summary Judgment by CH2M Hill (Rec. Doc. 436)

## I.     **Factual and Procedural Background**

As detailed in the Court's prior Order and Reasons, this *qui tam* case concerns the defendants' alleged failure to comply with Louisiana state liquefied petroleum (LP) safety statutes during the installation of temporary housing units (THUs) in the aftermath of Hurricanes Katrina and Rita. Rec. Doc. 53. During this time, the defendants, Fluor Enterprises, Inc. ("Fluor"), Shaw Environmental, Inc. ("Shaw"), and CH2M Hill Constructors, Inc. ("CH2M Hill"), engaged subcontractors to install LP gas systems in THUs used to house people displaced by Katrina and Rita. *Id*. The relators allege that defendants violated the False Claims Act by claiming reimbursement from FEMA for THU installations that were out of compliance with state LP laws. *Id*.

On November 13, 2014, the Court issued an Order and Reasons dismissing relators' breach of contract claims in Counts 1 and 2 of the First Amended Complaint. Rec. Doc. 369 at 21. However, the Court granted the relators leave to file a second amended complaint setting forth specific facts showing that the defendants failed to obligate their subcontractors to comply with state LP gas statutes and regulations. Rec.

2

Doc. 369 at 29-30. The Court reasoned that if relators could plausibly plead these facts, then they could move forward on the theory that that defendants claims for reimbursements made to their subcontractors were false because the underlying subcontractors were absolutely null as a matter of state law. *Id.* at 26.

On December 11, 2014, the relators filed the Second Amended Complaint ("SAC") that set forth allegations of subcontract nullity. Rec. Doc. 370. However, the relators also substantially amended the complaint in other respects, pleading many new facts to support allegations of false certification, false statements, and intentional concealment that went beyond the leave granted by the Court. *Id.* In essence, the SAC alleges that the defendants misrepresented to FEMA that their subcontractors and staff had the proper training and licensing needed to perform LP gas installations or were in the process of receiving these qualifications. *Id.* The relators have now moved for summary judgment against CH2M Hill. Rec. Doc. 380. The defendants have filed motions to strike, motions to dismiss, and motions for summary judgment against the relators. Rec. Docs. 383, 387, 388, 390, 393, 436.


## II.    <u>Standards of Review</u>

### a.  *Rule 12(b)(6) Dismissal*

When considering a Rule 12(b)(6) motion to dismiss, the court must take the well-pleaded factual allegations of the complaint as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007) (citations and quotation marks omitted). Plaintiff's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the content of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### b. **Rule 56 Summary Judgment**

Summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Regardless of whether it bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is satisfied, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324. Material facts are those which "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Rather, "so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Id.*

### III.   <u>Law and Analysis</u>

#### a.  *Leave to File Second Amended Complaint*

After filing the SAC on December 11, 2014, the relators sought the Court's leave to file the SAC. Rec. Docs. 370, 388. The defendants oppose the motion. Rec. Docs. 394, 404, 405, 416, 423. Although the SAC goes beyond the leave granted to relators to file an amended complaint pleading a theory of nullity based on the defendants' failure to obligate its subcontractors to comply with state law and regulations, the Court nonetheless finds that leave to file should be granted. Fed. R. Civ. P. 15(a) provides that the Court "should freely give leave [to amend pleadings] when justice so requires." Given the evolving nature of the Fifth Circuit's jurisprudence surrounding the FCA that were discussed in the Court's previous Order and Reasons and the fact that discovery in this matter has been ongoing, the Court believes it will serve the interests of justice to allow

relators to amend their pleadings. Accordingly, the Motion for Leave to File Second Amended Complaint is GRANTED. Rec. Doc. 388. In addition, the Motions to Dismiss or Strike New Allegations in the SAC filed by Shaw and CH2M Hill are DENIED. Rec. Docs. 385, 390. The Court also finds Fluor's arguments for dismissal based on Fed. R. Civ. P. 15 and 16 unavailing, and will discuss the remaining arguments in Fluor's Motion to Strike/Dismiss below. Rec. Doc. 393-2.


### b. *Fluor's Motion to Strike/Dismiss and Motion for Summary Judgment (Rec. Docs. 383, 393)*

Fluor has moved for the Court to strike or dismiss the SAC. Rec. Doc. 383 at 1-2. Fluor has also moved for summary judgment on Counts 1 and 2 of the SAC. Rec. Doc. 393-2 at 1.

#### 1. *Absolute nullity of subcontracts*

Fluor argues that the SAC should be stricken because it violates the Court's order by failing to plead the necessary allegations to sustain a claim of "false eligibility for payment." Rec. Doc.  383-1 at 6. In its Order and Reasons of November 13, 2014, the Court stated that the relators' theory of recovery based on absolute nullity had plausible merit, but was not properly pleaded in the First Amended Complaint. Rec. Doc. 369 at 26. The Court granted the relators leave to amend their complaint to "plead sufficient facts to allow for a plausible inference that defendants failed <u>in their subcontracts</u> to require their subcontractors to obtain the required permits" and "failed to obligate its subcontractors to comply with state LP gas statutes and regulations." *Id*. at 28-29. The Court elaborated that "it does not violate public policy to enter into a contract with a pre-

permit contractor, as long as the contract requires the contractor to obtain the necessary permits before the work begins." *Id*.

In the SAC, relators allege that Fluor had knowledge that none of the subcontractors' employees held or had applied for the required gas installation permits, and "never mentioned the terms or provisions of the Louisiana LP gas statutes and regulations" in its subcontracts. Rec. Doc. 388-1 at ¶54-55. Moreover, Relators allege that Fluor failed to enforce state LP gas laws against the subcontractors and, throughout its operation and supervision of the subcontracts, failed to obligate the subcontractors to comply with state gas permitting and training statutes. *Id*. at ¶57.

Fluor goes beyond the pleadings and rebuts these allegations, claiming that the subcontracts require the subcontractors to obtain "all necessary permits and require compliance with Louisiana law." Rec. Doc. 383-1 at 11. A declaration from Charles Whitaker, who oversaw Fluor's contracts with FEMA, states that while the specific contractual provisions of each subcontract vary, the subcontracts each "expressly require the subcontractors to obtain all applicable permits required by Louisiana law and otherwise comply with all applicable Louisiana laws." Rec. Doc. 383-2 at 5. With a few exceptions, each of the Fluor subcontracts at issue in this litigation sets forth:

> All work performed shall be in accordance with all applicable federal, state and local codes and regulations. The provisions herein and typical details shall not be construed as lowering standards established by local laws, ordinances or regulations.
>
> The contractor must be, or have employed, registered licensed technicians . . . to conform to State and local requirements for installing and/or hooking up systems or repairing defects involving their particular trade. It is the contractor's responsibility to obtain all proper licenses and permits to set-up the units. Locally required permits shall be applied for within 3 working days of work order issuance. Units shall be ready to occupy within 3 days of permit issuance.

> [and]
>
> The contractor shall be responsible for obtaining necessary permits
> associated with placing and installing the unit and utility installation.
> Permits shall be applied for within 3 working days of work order issuance.
> Unit shall be ready to occupy within 3 days of permit issuance. . .

*Id.*[1] As can be seen from the language of the subcontracts that included the above clauses,

Fluor clearly mandated that its subcontractors must obtain all permits required under

Louisiana law, and placed upon the subcontractors the obligation to apply for any permits

that it did not already possess. The relators do not contest the authenticity of the

subcontracts.

The relators argue that this language is insufficient, and that the subcontracts must

require that the subcontractors obtain gas safety permits specifically. Rec. Doc. 395 at 4.

Relators point to the reasoning of Louisiana's appellate courts in the cases of *East

Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC*, 5 So. 3d 238 (La. App. 1 Cir. 2008)

and *River Cities Construction Co. v. Barnard & Burk, Inc.*, 444 So. 2d 1260 (La. App. 1

Cir. 1984) in support of this proposition, stating that the implication of these two cases is

that a contract must specify the permit that a pre-permit contractor must obtain in order to

lawfully engage the pre-permit contractor. The relators state:

> When contracting parties like the ones in those cases go out of their way to
> incorporate into their contract a specified permit requirement of a
> specified government agency charged with enforcing a "rule of public
> order," and to expressly hinge their performance duties on first obtaining

---

[1] The subcontracts that do not include this provision instead include provisions that are substantially similar
for the purpose of determining whether the subcontracts required compliance with state LP gas law and
regulations. These provisions require that the subcontractors must perform work "in accordance with all
applicable federal, state and local codes and regulations" and that "it is the contractor's responsibility to
obtain all proper licenses and permits to set-up the units" and that "locally required permits shall be applied
for within 3 working days of work order issuance." They further provide that "the contractor shall be
responsible for obtaining necessary permits associated with placing and installing the unit and utility
installation." Rec. Doc. 38302 at 6.

the specified permit, the parties are honoring (and are not violating) that public rule and that permit requirement's public purpose.

Rec. Doc. 395 at 3. However, neither of these opinions supports relators' interpretation. Although these cases deal with contracts that required the contractor to obtain specific permits within an agreed-upon timeframe, the Louisiana First Circuit Court did not hold that a failure to specify which permits were required would render a contract null. Rather, the court found that where a contract mandated that a specific permit be obtained in a specified timeframe in the contract, then a contractor's failure to do so either constituted a breach of contract or triggered an alternate remedy set forth in the contract. *See River Cities Const. Co.*, 444 So.2d at 1265-66; *East Tangipahoa Dev. Co.*, 5 So. 3d at 248.

Thus, the Court finds that, contrary to the allegations of the SAC, the subcontracts do obligate compliance with state LP gas laws and do not violate public order. Thus, the relators' claim fails as a matter of law.

　　*2.　False certification and false statements*

In addition to amending their complaint to attempt to state a claim for false eligibility for payment, relators have added new allegations that Fluor knowingly concealed information and intentionally made misrepresentations to FEMA regarding the qualifications of its staff and subcontractors. *See generally*, Rec. Doc. 388-1 at 33-46. Relators argue that Fluor's actions constitute violations of 31 U.S.C. §3729(a)(1)(A) for false certification and 31 U.S.C. §3729(a)(2)(B) for false statements. *Id.* at 82-84, ¶165-74.

In its previous Order and Reasons, the Court found that "a knowing attempt to deceive the Government about the nature of commercial [services]" provided pursuant to a government contract could constitute a violation of the FCA. Rec. Doc. 369 at 18

9

(citing *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010)).

*See also*, *U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*, -- F.3d ---, 2015 WL

4231645, 16 (5th Cir. 2015). The Court dismissed relators' claims against Fluor, stating

that "[u]nder the circumstances. . . relators must plead that Fluor successfully

misrepresented the nature of its services throughout the corrective action/payment

reduction process", referring to the period of time in which FEMA was entitled to compel

corrective action or reduce payment for deficient work under its contract with Fluor. Rec.

Doc. 369 at 20. Because relators had not made such allegations, the Court dismissed its

false certification claim. *Id*.

In response to the Court's holdings, relators now allege in the SAC that beginning

in January 2006:

> Fluor made, used, and caused to be made or used, a series of false
> statements to (and concealments from) FEMA designed and intended by
> Fluor managers to assure FEMA that Fluor's installation subcontractors
> were in compliance with Louisiana gas safety statutes, that the travel
> trailer installations being conducted by such subcontractors through their
> employees were lawful and otherwise proper, and that Fluor was
> otherwise entitled to be paid for such installation activities.

Rec. Doc. 388-1 at 33. The relators allege that these statements were material to the

legality of Fluor's claims for reimbursement. *Id*. at 33. Specifically, relators allege that:

-   On January 13, 2006, FEMA informed Fluor that Louisiana public safety officials

    were ensuring proper training of Fluor's sub-contractors. However, Fluor did not

    require its subcontractors to obtain training or permits to come into compliance

    with the gas safety statutes. Relators argue that Fluor's failure to respond to

    FEMA constitutes knowing concealment of the fact that the subcontractors were

    not properly permitted or trained. *Id*. at 34.

10

- Fluor misrepresented to FEMA that it was "taking review measures" after an explosion occurred inside a trailer by a different FEMA contractor. *Id*. at 35.

- After learning of state enforcement officials' plan to require contractors to return to previously installed trailers to test for gas leaks, Fluor failed to take any action to require its subcontractors to obtain permits or training required by the State. *Id*. at 36.

- In response to an inquiry from FEMA on February 21, 2006 as to whether Fluor's installation contractors had the required permits, Fluor represented that a subsidiary which did not engage in installation had obtained the required gas permit and sent its personnel to the required courses. Fluor did not disclose that none of its installers were in compliance. *Id*. at 39.

- On or about April 17, Fluor represented to FEMA that it and its affiliates and subcontractors had provided training to over four hundred employees, but in reality had not caused any employees to be trained in gas safety. *Id*. at 42-43. *See also*, Rec. Doc. 409-4 at 3.

- On or about April 18, Fluor misrepresented that there had been no fire-related deaths in Fluor installed trailers, though there had been a serious injury on April 12 that had resulted in death on April 18 or 19. *Id*. at 43-44.

- Fluor represented during walk-through inspections with FEMA representatives that its trailers were properly installed. *Id*. at 44.

- On or about November 3, Fluor misrepresented to FEMA in its "Work Plan Completion Report" that it had taken proactive measures to ensure proper safety permitting. *Id*. at 45. *See also* Rec. Doc. 409-2.

11

- Fluor presented invoices that it falsely claimed to be in accordance with the terms of Fluor's contract with FEMA. *Id*. at 45-46.

In response to these allegations, Fluor maintains that FEMA's employees were aware that Fluor's subcontractors did not have the required permits during the time period in question and were accused of being in violation of state gas safety regulations. Rec. Doc. 393-2 at 9. For instance, Clifford Oliver, the FEMA IA-TAC Program Manager, states that on January 13, 2006, he became aware that the Louisiana Liquefied Petroleum Gas Commission ("LPGC") claimed Fluor and its subcontractors had violated LPGC regulations, and that on February 21, 2006, through an email from David Knowles of CH2M Hill to FEMA, he learned that Fluor and its subcontractors were accused of not having the required LPGC permits. Rec. Doc. 393-26 at 7-8. Even with this knowledge, Oliver continued to secure additional funding for Fluor under the IATAC contract. *Id*. at 9. Stephen M. De Blasio, Sr., FEMA's Director of Housing Operations at the time, likewise maintains that on January 13, he became aware that the LPGC believed Fluor and its subcontractors were in violation of LPGC regulations. Rec. Doc. 393-25. Fluor maintains that the declarations of Knowles and De Blasio demonstrate that FEMA knew of Fluor's potential noncompliance with LPGC requirements as early as January 13, 2006, and thus FEMA was not misled by the actions alleged by the relators.

The Court finds that relators have shown there are issues of material fact as to whether Fluor intentionally misrepresented the nature of its services. A reasonable jury could find that, taken together, the incidents alleged by the relators constituted a misrepresentation of Fluor's efforts to take corrective action following FEMA's discovery that Fluor was alleged to be in violation of state LP gas requirements. For

instance, Fluor's claims in an email from Lowell Wiles, Fluor's Field Operations

Manager, on April 17 could rise to the level of a knowing and material misrepresentation

that was intended to deceive FEMA. Rec. Doc. 409-2 at 98-99. If, as relators argue, Fluor

had not actually caused four hundred employees to be trained by the LPGC but

nevertheless represented that it had when asked by FEMA, then this claim amounts to a

statement made with the intent to deceive. In addition, Fluor's assertion that it had taken

proactive measures to ensure proper permitting in its November 3 report could also

constitute a knowing and material misrepresentation under the FCA.

Fluor argues in the alternative that it should not be held liable due to the

"government knowledge" defense. Rec. Doc. 393-2 at 16. This "defense" stands for the

proposition that "the government's knowledge of the falsity of a statement or claim can

defeat FCA liability on the ground that the claimant did not act 'knowingly,' because the

claimant knew that the government knew of the falsity of the statement and was willingly

to pay anyway. *U.S. ex. Rel. Southland Management Corp.*, 326 F.3d 669, 682 (5th Cir.

2003). However, as the Fifth Circuit has noted, the "government knowledge" defense is

inaptly named, as it is not a defense to a knowing presentation of a false claim, but rather

the consideration that "[w]here the government and a contractor have been working

together, albeit outside the written provisions of the contract, to reach a common solution

to a problem, no claim arises." *Id*. Thus, if the government had knowledge and

acquiesced in the contractor's actions, then that knowledge may show that the contractor

did not submit claims with the requisite scienter to sustain an FCA claim. *Id*.

The Court finds that Fluor has not shown that there is no contested issue of

material fact as to whether FEMA had actual knowledge of the extent of its

subcontractors' alleged violations of LPGC requirements and regulations. The statements by Knowles and De Blasio, on which Fluor relies heavily, merely demonstrate that FEMA officials were aware of accusations that Fluor and its subcontractors *may* have been out of compliance. Although De Blasio writes that he instructed Fluor to continue installing trailers in accordance with the newly discovered regulatory requirements and to retrofit trailers that had already been installed to gain compliance, the April 17 email and November 3 report show that Fluor may have falsely represented the steps it was taking to remediate its alleged noncompliance. Fluor's argument that FEMA could have availed itself of a range of remedies for nonconforming services is unconvincing. While Fluor argues that FEMA had knowledge of allegations of non-compliance, Fluor has not shown that FEMA also had knowledge that contracting and subcontracting staff continued to go without training even after Fluor claimed such training had taken place.

Thus, the Court GRANTS IN PART and DENIES IN PART Fluor's Motion for Summary Judgment and Motion to Strike/Dismiss. Although the Court finds that relators' allegations of absolute nullity in Fluor's subcontractors to be without merit, there remain issues of material fact as to whether Fluor knowingly misled FEMA in violation of the FCA, and thus DENIES summary judgment.

### c.   *Shaw's Motion to Dismiss Count 4 or, in the Alternative, for Partial Summary Judgment*

Shaw moves for the dismissal of Count 4 of the SAC, which charges that Shaw made false claims under 31 U.S.C. §3729(a)(1)(A) of the FCA. Rec. Doc. 388-1 at 85; Rec. Doc. 387-1 at 5.

14

1. *Subcontract nullity*

Shaw argues that the relators have failed to allege that Shaw did not obligate its

subcontractors to comply with state LP gas laws. Rec. Doc. 387-1 at 7. The SAC states:

> In negotiating, entering, and implementing its subcontracts with each of its
> installation subcontractors, moreover, Shaw never made any reference to any
> of Louisiana's LP Gas Commission statutes or regulations (or to any permits
> or training required thereby) in the terms of any of its installation subcontracts
> or any associated documents or specifications, and never otherwise enforced
> as to any such installation subcontractor (or any of their employees) any
> permitting, training or other requirement of Louisiana's LP gas statutes or
> regulations, or otherwise obligated any of them to proceed to obtain gas
> installation permits or gas safety training, or otherwise begin to comply with
> those gas laws.

Rec. Doc. 388-1 at 52, ¶105.

Similar to Fluor, Shaw incorporated into its subcontracts language obligating its

subcontractors to "obtain and maintain all permits and licenses required for [their]

performance of said work and to comply with all federal, state and local laws. . .,

ordinance and rules, regulations and orders of governmental agencies applicable to said

work." Rec. Doc. 387-2 at 4. For the reasons discussed above in reference to Fluor, the

Court finds that such language obligated Shaw's subcontractors to obtain LP gas

installation permits, and that the subcontracts' failure to specifically name the required

LP gas installation permits does not nullify the subcontracts.

Relators aver that Louisiana courts have nullified numerous construction-related

contracts even though the contract included either an implied or express provision

requiring that all necessary permits be obtained. Rec. Doc. 410 at 6, *citing ABC Bldg.*

*Contractors, Inc. v. Westbank Prof'l Bldg. P'ship*, Civ. A. 11-0747, 2011 WL 9160401

(La. App. 4. Cir. 11/23/11); *Touro Infirmary, Preferred Continuum Care-New Orleans,*

*LP v. Travelers Prop. Cas. Co. of Am.*, No. CIV.A. 06-3535, 2007 WL 496858, at *2

(E.D. La. Feb. 13, 2007); *Executone of Central La. V. Hospital Serv. Dist.*, 798 So.2d

987, 993 (La.App. 1 Cir. 2001); *J. R. Hagberg v. John Bailey Contractor*, 435 So.2d 580

(La. App. 3 Cir. 1983); *United Stage Equipment v. Charles Carter & Co., Inc.*, 342 So.2d

1153 (La. App. 1 Cir. 1977). However, these cases all deal with violations of La. R. S.

§37:2150, *et seq*. That statute explicitly prohibits a person from engaging in the business

of contracting without a license and defines the "business of contracting" to include

undertaking and offering to construct or supervise construction work. La. R. S.

§37:2157(A). Thus, the law makes the act of entering into a contract itself unlawful

without an active contractor's license. La. R. S. §2160. The nullity of the agreements in

those cases, then, is based in the illegality of entering into the contracting agreement, not

the failure of the contract to require a specific form of licensing. The Court finds,

therefore, that these cases do not support relators' argument, and relators have not shown

a basis for recovery based on absolute nullity. This argument is DISMISSED.

      *2.   False statement allegations*

      Shaw next argues that the new factual allegations in the SAC do not make out a

claim under §3729(a) of the FCA. In the SAC, relators allege that Shaw:

- Knowingly submitted gas installation invoices although its employees and

  subcontractors were not properly permitted or trained under Louisiana law, which

  violated FEMA's Task Orders. Rec. Doc. 388-1 at 2-3, ¶3.

- Failed to require its subcontractors to acquire training or permits after learning of

  LPGC's intentions to test for gas leaks on January 13, 2006 and of an LP gas-

  related explosion installed by its subcontractor on January 29, 2006. *Id*. at 56-59,

  ¶113-120.

- Stated to FEMA that it was complying with all federal, state and local laws and regulations on February 14, 2006 while attempting to secure additional funds to hire new subcontractors to test for gas leaks. *Id*. at 60, ¶121.

- Concealed from a FEMA auditor that none of its installation subcontractors had received required permits or training after FEMA requested the license numbers for personnel and procedures for pressure testing units that use propane. *Id*. at 61, ¶123-24.

- Stated to FEMA on May 7, 2006 that "All parties associated with any handling of propane are required to attend training and pass an exam associated with the specific class desired. These exams are administered and maintained by the State LPG Commission." *Id*. at 62, ¶126.

- Represented to FEMA on May 24, 2006 in a document titled "Award Justification – Haul & Install of Trailers" that its subcontractors had the requisite knowledge of local ordinances and licensure requirements. *Id*. at 62-63, ¶128.

- Represented to FEMA officials during "walk-through" inspections of travel trailers that the trailers were ready for occupancy despite knowing that the gas systems were installed by untrained and un-permitted subcontractors. *Id*. at 63, ¶129.

- Submitting invoices for trailer installation services which included illegal gas system installations by Shaw's subcontractors. *Id*. at 65, ¶132.

Thus, the relators allege that Shaw made false statements to FEMA regarding its subcontractors' compliance with LPGC requirements, withheld information relevant to gas safety, and submitted invoices for illegal gas system installations.

Shaw argues that these allegations do not sufficiently state a claim for false certification because FEMA did not require certification as a prerequisite to payment. Rec. Doc. 387-1 at 13. However, in its previous Order and Reasons, the Court declined to hold that a "false certification" claim must fail if certification of compliance was not a prerequisite to payment of the claim. Rec. Doc. 369 at 18-19. Instead, the Court noted that in spite of the holdings of *United States ex rel. Steury v. Cardinal Health, Inc. (Steury I)*, 625 F.3d 262 (5th Cir. 2010) and *United States ex rel. Steury v. Cardinal Health, Inc. (Steiru II)*, 735 F.3d 202, 206 (5th Cir. 2013), the Fifth Circuit's ruling in *United States v. Aerodex, Inc.*, 469 F.2d 1003, 1008 (5th Cir. 1972) remained good law. Thus, the Court found that "FCA liability can lie for a knowing attempt to deceive the Government about the nature of commercial services pursuant to a Government contract", even if the contract did not premise payment on a certification of compliance. Rec. Doc. 369 at 18 (internal citations omitted). The statements alleged by relators, including but not limited to Shaw's alleged statements on February 14, May 7, May 24, and during its "walk-through" inspections, meet the pleading standard of Rule 12(b)(1) for a knowing attempt to deceive the Government.  Thus, Shaw's argument for dismissal based on the lack of a certification prerequisite fails.

   *3.   Partial summary judgment on damages*

Finally, Shaw moves for partial summary judgment on the issue of damages under Count 4.  Rec. Doc. 387-1 at 16. Under the FCA, the government's damages are calculated by the difference between the amounts the government paid and the value of goods or services the government received. *U.S. v. Science Applications Intern. Corp.*, 626 F.3d 1257, 1278-79 (D.C. Cir. 2010). Thus, Shaw argues that any amounts Shaw

paid to its subcontractors and for which it was reimbursed by FEMA cannot constitute damages to FEMA. Rec. Doc. 387-1. at 18. However, the government may be able to recover the full value of payments made to the defendant if it is proven that the government received no value from the product delivered. *Science Applications*, 626 F.3d at 1279. The burden of proof to show that no value was received lies with the plaintiff. *Id.* Relators respond that the issue is not ripe for summary judgment, as Shaw has produced no evidence to support its damages theory. Rec. Doc. 410 at 19. Relators further argue that the Court should apply the method set forth in *U.S. ex rel. Longhi v. U.S.*, 575 F.3d 458 (5th Cir. 2009) for calculating damages in this case. *Id.*

In *Longhi*, the Fifth Circuit affirmed that the government had received no tangible benefit from a contract under the Small Business Innovation Research ("SBIR") program and was thus damaged in the total amount of the grants it had paid out. *Longhi*, 575 F.3d at 472-73. However, the Fifth Circuit's reasoning was premised upon facts that are not present in the instant case. The Fifth Circuit found that the government had received no tangible benefit because the purpose of the grant was to "award money to eligible deserving small businesses." *Id.* This "intangible benefit" to the government was fundamentally thwarted because the defendants had fraudulently represented their qualifications for the grant, and thus were undeserving of the grant award money. *Id.* Therefore, damages in the full amount of the reward were warranted.

Here, by contrast, the purpose of Shaw's contract with FEMA was to install travel trailers to temporarily house people displaced by Hurricane Katrina and Hurricane Rita. Rec. Doc. 388-1 at 2, ¶3. According to relators' allegations, the installations were actually performed and the trailers actually housed displaced individuals. *Id.* at 63-66,

¶130-132. Thus, the Court cannot conclude that the government derived no benefit from Shaw's work under the contract, and rejects relators' argument that the *Longhi* method for calculating damages should be adopted here.

However, the Court finds that summary judgment is premature on the question of damages calculation. Under the "benefit of the bargain" approach that Shaw urges, when the market value of the goods or services is not ascertainable, the factfinder must determine damages by the difference between the amount the government actually paid less the value of the goods or services received as measured by the factfinder. *U.S. ex rel. Feldman v. van Gorp*, 697 F.3d 78, 88 (2d Cir. 2012). Shaw has not presented evidence to show that the value of the gas installations and other services performed by Shaw subcontractors was equal to the value that FEMA actually reimbursed to Shaw. Thus, Shaw's motion for partial summary judgment is DENIED.

Accordingly, Shaw's Motion to Dismiss or for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART (Rec. Doc. 387). The Court DISMISSES the relators' claim based on subcontract nullity.

### d. *Relators' Motion for Summary Judgment and CH2M Hill's Cross Motion for Summary Judgment*

The relators have moved for summary judgment on their claims against CH2M Hill for allegedly submitting false claims for payment. Rec. Doc. 380. The relators bring suit against CH2M Hill for presentation of a false claim under 31 U.S.C. §3729(a)(1)(A) of the FCA as well as for use of a false statement or record under 31 U.S.C. §3729(a)(1)(B) of the FCA. Rec. Doc. 388-1 at 86-89, ¶180-189.  CH2M Hill has filed a cross-motion for summary judgment, asking the Court to dismiss these claims. Rec. Doc.

436-1. As these motions both deal with the same underlying claims against CH2M Hill, the Court will discuss the motions together.

    *1.  Subcontract nullity*

The relators assert that CH2M Hill failed in its subcontracts to obligate its subcontractors to comply with state gas safety requirements and regulations, and therefore its subcontracts are null. Rec. Doc. 380 at 8-9. CH2M Hill has presented sworn testimony verifying that its subcontracts included the following language or substantially similar language:

> It is the [sub]contractor's responsibility to obtain all proper licenses and permits to set-up the units.
> …
>
> The [sub]contractor shall be responsible for obtaining necessary permits associated with placing and installing the unit and utility installation.
> …
>
> The Subcontractor shall be licensed and insured to work in the State of Louisiana and shall comply with all applicable federal, state, county and local laws and regulations. The Subcontractor shall obtain all applicable permits required to perform [conduct] this work. . .

Rec. Doc. 385-2 at 5-11. For the reasons discussed above in reference to Shaw and Fluor, the Court finds that these provisions obligated CH2M Hill's subcontractors to obtain the necessary LPGC permits and training. Therefore, the Court DISMISSES relators' claim against CH2M Hill based on subcontract nullity.

    *2.  False statements*

Relators also allege that CH2M Hill deliberate misrepresented to FEMA that its subcontractors were obeying Louisiana's gas permitting and training statutes. Rec. Doc. 380 at 13. These misrepresentations included:

- An email from CH2M Hill executive David Knowles on April 10, 2006 that stated to FEMA that "all of our subcontractors who deal with propane have met Louisiana state requirements" as a false statement that is actionable under the FCA. *Id*. at 14. The Court previously found that the allegations regarding this email were serious and "tend to support a cause of action for false certification." Rec. Doc. 369 at 22.

- Informing FEMA personnel that travel trailers were "ready for occupancy" prior to conducting a physical walk-through with FEMA. However, at the time, the required protocol for ensuring the safety of the gas installation had not been completed. Rec. Doc. 380 at 16-17.

- Withholding information about the failure of gas installation subcontractors to obtain permits and training, even after FEMA had stated unequivocally that compliance was required. *Id.* at 17-18.

In response to these allegations, CH2M Hill maintains that FEMA was aware of the fact that its subcontractors did not have the required permits and training, yet continued to approve payments to CH2M Hill so that it could install new trailers and remedy prior violations. Rec. Doc. 444 at 7.

A declaration from Stephen M. Reams, the FEMA officer responsible for temporary housing relief operations in Louisiana during the time period in question, shows that on January 20, 2006, FEMA was aware that the LPGC claimed CH2M Hill and its subcontractors were installing trailers in violation of state regulations concerning gas safety. Rec. Doc. 436-6 at 6. The declaration further evidences that on February 20, 2006, Knowles informed FEMA that CH2M Hill had been told by LPGC that permits for

gas installation were required by law, and that unless FEMA could secure a waiver of the permit, CH2M Hill would require many of its staff to undergo trainings as soon as possible. *Id*. at 8, 28. Reams himself learned of CH2M Hill's lack of compliance when he was forwarded Knowles's email on February 21. *Id*. at 9. Reams states that in spite of knowing that CH2M Hill and its installation subcontractors lacked LP gas permits and training, FEMA continued to approve and reimburse CH2M Hill's invoices. *Id*. at 10.

With regards to the April 10 email from Knowles which relators claim falsely represented that CH2M Hill's subcontractors were compliant with state regulations, Reams states that given the context of this communication, this was not a misrepresentation. Rather, during the time leading up to the email, Reams had "made periodic inquiries on behalf of FEMA" about CH2M Hill's progress in obtaining the LP gas training and certification that LPGC demanded, and that during this time FEMA was aware that HILL and its subcontractors did not have such permits or certification. Rec. Doc. 436-6 at 10. Thus, when Reams received the April 10 email, he understood that Knowles's statement that "all of our subcontractors who deal with propane have met Louisiana State requirements" referred to HKA and other separately retained subcontractors who were retroactively performing post-installation LP gas leak check testing, and not to CH2M Hill's installation subcontractors. *Id*. at 11. Relators have not offered evidence to rebut Reams's account. Based on this information, the Court finds that the April 10 email does not constitute a false statement that is actionable under the FCA.

Relators also argue that by designating trailers "ready for occupancy", CH2M Hill made false statements under the FCA. Rec. Doc. 380 at 16-18. In support, relators point

to the deposition of Kenneth Melchiorre, CH2M Hill's corporate representative. The deposition establishes that CH2M Hill was mandated by FEMA to ensure that permits were in place to install temporary disaster housing and to report to the COTR other state or local requirements that could "affect the timely efficient and cost-effective installation and occupancy of temporary disaster housing." Rec. Doc. 380-6 at 30-32. Relators also point to the deposition of James Henry Piefer, a program manager for CH2M Hill during the time in question. The deposition establishes that prior to allowing tenants to move into the trailers, CH2M Hill, its installation subcontractor, government personnel, and others had to complete inspections to ensure that the unit was "Ready For Occupancy." Rec. Doc. 380-9 at 183-185. Finally, the deposition of Michael Falino of CH2M Hill shows that CH2M Hill was performing testing to ensure that gas was flowing and appliances functioning, but did not perform tests in accordance with the LPGC requirements because they were not aware of the LPGC requirements for several months. Rec. Doc. 380-5 at 27, 115-117, 130-132, 140-144.

The Court finds that these declarations do not show that CH2M Hill acted with the specific intent to defraud the government when certifying that the trailers were "Ready For Occupancy." Instead, the depositions taken together show that CH2M Hill certified that the trailers were "Ready For Occupancy" without the knowledge that additional gas leakage testing, training and permits were required by the LPGC. Realms' declaration shows that CH2M Hill likely became aware of the LPGC requirements on or shortly before February 20, 2006, when Freddie Tyson, CH2M Hill's safety manager, met with Charles Fuller, the director of the LPGC. Rec. Doc. 436-6 at 8. After this realization, CH2M Hill was in regular communication with FEMA about its attempts to

come into compliance, and FEMA instructed CH2M Hill to continue with trailer installations. *Id*. at 10. The Court cannot discern any knowing deception by CH2M Hill from the evidence before it. For the same reason, the Court finds that the relators have not shown that CH2M Hill "knowingly concealed" from FEMA information about whether its installation subcontractors were in compliance with LPGC's requirements. Rec. Doc. 380 at 17.

Falino's deposition, which relators point to in support of their allegation that CH2M Hill deliberately withheld information, merely establishes that Falino did not take action in response to an email from Stephen De Blasio at FEMA. Rec. Doc. 380-5 at 179-180. The same is true of Piefer, the other recipient at CH2M Hill of the email. Rec. Doc. 380-9 at 118. However, the email itself did not mandate action from CH2M Hill. Rather, it was addressed to relators following De Blasio's meeting with them on January 13, 2006, and asked the relators to coordinate with CH2M Hill and the other contractors "to ensure proper training" of the subcontractors. Rec. Doc. 380-11. When asked whether Falino could point to specific communications between CH2M Hill and FEMA where CH2M Hill had discussed the status of its installation subcontractors with regards to training and permitting, Falino states that he could not point to a specific communication, but that CH2M Hill had "a lot of communication with FEMA about where we stood." Rec. Doc. 380-5 at 202. Finally, while it is true that Guy Bonomo at FEMA wrote to CH2M Hill stating that "You have to comply with all state requirements. End of story," (Rec. Doc. 380-15) this statement—taken in conjunction with Reams' statements that FEMA was aware that CH2M Hill and its subcontractors did not have the required

permits and training—does not show that CH2M Hill intentionally withheld information from FEMA with the specific intention of defrauding the government.

Thus, the Court finds that relators have not shown that there is an issue of material fact regarding whether CH2M Hill acted with the specific intent of defrauding FEMA. Rather, the record reflects that at some point in January or February of 2006, FEMA and CH2M Hill became aware that LPGC requirements were not being followed; that FEMA and CH2M Hill were in contact about taking measures to remedy the situation; that FEMA was aware of CH2M Hill's efforts to come into compliance; and that FEMA continued to approve payments in spite of this knowledge. Accordingly, the Court DISMISSES relators' claims against CH2M Hill, DENIES the relators' Motion for Summary Judgment (Rec. Doc. 380) and GRANTS CH2M Hill's Cross-Motion for Summary Judgment (Rec. Doc.  436)

## IV.    Conclusion

For the foregoing reasons, IT IS ORDERED that:

- the Motion for Summary Judgment against CH2M Hill by the Relators is DENIED (Rec. Doc. 380)

- the Motion to Strike Relators' Amended Complaint by Fluor is GRANTED IN PART and DENIED IN PART (Rec. Doc. 383)

- the Motion to Strike Relators' Amended Complaint by CH2M Hill is DENIED (Rec. Doc. 385)

- the Motion to Dismiss or for Partial Summary Judgment by Shaw is GRANTED IN PART and DENIED IN PART (Rec. Doc. 387)

- the Motion for Leave to File A Second Amended Complaint is GRANTED (Rec. Doc. 388)

-   the Motion to Dismiss or, in the alternative, to Strike by Shaw is DENIED (Rec. Doc. 390)

-   the Motion for Summary Judgment by Fluor is GRANTED IN PART and DENIED IN PART (Rec. Doc. 393)

IT IS FURTHER ORDERED that the any causes, claims, or counts based on the nullity of defendants' subcontracts are DISMISSED against all defendants WITHOUT PREJUDICE to the United States of America.

IT IS FURTHER ORDERED that the relators' claims against CH2M Hill are DISMISSED WITHOUT PREJUDICE to the United States of America.

New Orleans, Louisiana this 10th day of September, 2015.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

27